# The Chicago and Alton Railroad Company

## *v.*

## Mary Sullivan, Admx.

1. RAILROADS—*when liable for injury to one employee through the fault of another.* If a servant of a railroad company be injured through the incompetency and unskillfulness of a fellow-servant, or in consequence of defects in machinery or track, and the company be guilty of negligence in the employment and retention of such agent, or in the construction and repair of its machinery and track, it is liable in damages.

2. HABITUAL INTEMPERANCE of a conductor, under circumstances bringing knowledge thereof to his employers, is sufficient to render them liable for injury resulting therefrom.

3. CONTRIBUTORY NEGLIGENCE. Partial or slight negligence and inattention of the party injured will not bar recovery, when palpable negligence of the employer is proven.

4. INSTRUCTIONS. The giving or refusing of instructions, when it is clear that the jury are not misled, and when substantial justice has been done, will not justify setting aside the judgment.

APPEAL from the Circuit Court of Menard county; the Hon. CHARLES TURNER, Judge, presiding.

Mr. N. W. BRANSON, for the appellant.

Messrs. LACEY & WALLACE, for the appellee.

Mr. JUSTICE SCOTT delivered the opinion of the Court:

This action was brought by the appellee, under the statute, against the appellants, for wrongfully causing the death of William Sullivan. The deceased was an employee of the company, and was, at the time he received the injuries from which he afterwards died, engaged at work on a gravel or dirt train. The accident occurred on the 13th day of May, 1870.

The train on that day was cut in two, so that the dirt could be thrown off on either side of the bridge over Caviness Creek. The train was cut in two some distance before reaching the bridge where the dirt was to be deposited. From that point to the bridge there was a descending grade, and it was the intention of the parties having the train in charge to allow the detached portion to move by its own momentum across the bridge. This it did not do, and for the purpose of moving it across to the desired point, O'Keefe signalled the conductor to move up that portion of the train to which the engine was attached, which he did.

The deceased, Sullivan, was on a flat car loaded with dirt, which stood over the bridge, sitting with his feet hanging between two cars. When the two parts of the train came together it produced a violent shock, which threw Sullivan off the car on to the bridge, and from there he fell to the bottom on some ties, and received injuries from which he subsequently died.

The facts most relied on to charge the company with negligence was the unfitness of O'Keefe for the position he occupied, and in his negligence in the conduct of the train on the day the casualty happened, and in keeping him in their service after his unfitness for the position was known or could have been known to them by the exercise of reasonable diligence.

The appellant, however, insists that, if the negligence of any employee of the company produced the injury to the intestate, it was that of a fellow-servant in the same line of employment, and therefore the appellee can not recover.

The doctrine that a servant can not recover from a common master for an injury resulting from carelessness or negligence of a fellow servant in the same line of employment, if the company has used due diligence in the selection of competent agents and servants, and in providing safe and suitable machinery and road bed, has been fully established by cases determined in this court: *Honner* v. *Ill. Cen. R. R. Co.* 15 Ill. 550; *Ill. Cen. R. R. Co.* v. *Cox,* 21 Ill. 25; *C. and A. R. R.* v. *Murphy,* 53 Ill. 336.

There are some duties that the company itself can not delegate to servants so as to avoid responsibility. It is the imperative duty of the company to provide suitable and safe machinery for the use of their employees, and a safe and secure road bed. *C. and A. R. R. Co.* v. *Shannon,* 43 Ill. 338; *C. and N. W. R. R. Co.* v. *Swett,* 45 Ill. 197.

In the latter case cited, it was held that the doctrine, an action will not lie by a servant against his principal for an injury sustained through the fault of a fellow servant, applies only to cases where the injury complained of occurs without the fault of the principal, either in the act which caused the injury, or the employment of the person who caused it.

It will be conceded that, if the employees in charge of the train were incompetent and unskillful, and that it was through their negligence or unskillfulness that Sullivan was injured,

and that the company was guilty of negligence in the employment or retention of such agents, that then the company is liable.

Through whose fault, then, did the accident happen, and was the company in any manner guilty of carelessness or negligence in regard to the cause that produced the injury, or in the employment or retention in their service of the person who caused it?

It appears from the evidence that O'Keefe was in charge and had control of the hands employed on the train. It was his duty to hire and discharge them, and to direct their movements. In a certain sense he had charge of the entire train and its management; and, as Morse, the superintendent of the Jacksonville division of appellant's road, states, "In fact, the conductor and engineer were to some extent under his charge." It was through his instruction that the train was separated, and when the detached portion failed to reach the desired point, it was through his direction to the conductor that the engine moved up that caused the fatal injury.

It is true, as the witnesses state, that the engineer was not bound to and would not obey signals from O'Keefe, but it is also true that signals from him to the conductor would be repeated by the conductor to the engineer, and then be obeyed. Such was the fact in the present instance. O'Keefe signalled the conductor to move up the engine and cars, and push the detached cars across the bridge, which was accordingly done.

Whether O'Keefe was a careful and competent man when he was first employed by the company, is not now a material inquiry. The controlling question is, whether he was an unfit person for his position at the time of the injury to Sullivan, and whether the company knew of his incapacity, or could have known it by the exercise of reasonable diligence. Upon this question there is a great deal of testimony in the record, and much of it is very conflicting. We must regard the verdict of the jury as settling the question of the incapacity and unfitness of O'Keefe for his position, against the appellant.

Upon a careful examination of the evidence, we are not prepared to say that the verdict is not warranted by the evidence, or that it is even against the weight of the evidence.

There is evidence tending to establish the fact that O'Keefe was under the influence of liquor; as the witness expresses it, he was "kind of wild" on the day of the injury to Sullivan. His conduct on that occasion was certainly reckless. The train was cut in two by his order, without any notice to the hands on it, and one part thrown against the other with great violence. There is some conflict in the evidence as to the exact position of O'Keefe on the train, but it is certain that he was near enough to have given the men warning of the approaching danger. It was his plain duty to give this notice, and it was gross and culpable negligence to omit it.

It was rather unusual to cut a train in two in that manner, and it seems to us that no prudent man would do it without giving the hands notice that they might guard against danger.

The evidence tends to show that O'Keefe's character as an intemperate man must have been known to the officers of the company. His habits in that regard were so notorious among the men, and so long continued, that we do not see how it is possible that they were not known to the division superintendent. If the officers of the company knew O'Keefe's habits in regard to getting drunk, it was gross negligence in the company to keep him in that position after that fact became known.

The work in which Sullivan was engaged was dangerous, even when controlled by careful and prudent men. The lives of men thus engaged ought not to be exposed to further hazard by being placed under the control of intemperate or reckless men. To do so is gross negligence, and the guilty company ought to respond in damages for any injury that may result from such conduct.

It is insisted that the injury was the result of carelessness on the part of Sullivan, and therefore the appellee can not recover.

We do not so understand the evidence. It is true that he did not select the most secure position on the train. It appears from the evidence that he had not been long in the service of the company, and it may be presumed that he was not familiar with the safest position on the train. A number of witnesses concur in stating that O'Keefe had not previously given any direction as to the position the men should occupy when the train was in motion. No train had ever been severed and thrown together in this manner since the employment of Sullivan, and it is not unreasonable to suppose that he could not have anticipated such conduct on the part of O'Keefe.

If it be conceded that Sullivan was guilty of negligence in the position he occupied, it was slight in comparison with that of the appellant, and would not bar the appellee's right of recovery.

It is assigned for error that the court refused to give the seventh and tenth instructions asked for by appellant.

So far as the seventh instruction announces any principle of law, it was given by the court in the fifth of the series given on behalf of the appellant, and there was no error in the court in refusing to give it a second time.

It may be conceded that the tenth instruction, which was refused by the court, states a correct principle of law, but the same principle was substantially stated in the first of the appellee's instructions.

It is very apparent, from the smallness of the verdict, that the jury did not give any damages by way of solace, or on account of the bereavement of the appellee, and hence the appellant was in nowise prejudiced by the refusal of the court to give the tenth instruction. It seems that the jury omitted to do the very thing that the instruction was intended to tell them they should not do.

Objections are taken to some of the instructions given on behalf of the appellee. It is true that some of them are not as accurately drawn as they should have been, yet, when the

entire instructions given on behalf of the appellee and appellant are considered together, they present a sufficiently accurate view of the law as applicable to the facts of the case, and were all that was required by the jury to enable them to render an intelligent verdict on the evidence.

Although some slight errors may appear in the record, we can see, from an examination of the evidence, that substantial justice has been done, and if the trivial errors that may appear were corrected, and another trial ordered, the result would necessarily be the same. In the view that we have taken of the evidence, another trial will be of no benefit to the appellant.

No material error affecting the merits of the case appearing, the judgment must be affirmed.

*Judgment affirmed.*