## THE MERCHANTS NATIONAL BANK OF SAVANNAH *v.* CARHART, and *vice versa.*

1. Where a special. deposit of property for gratuitous safe-keeping was made with a bank, which through its cashier issued a receipt for the property, specifying that the same was held subject to the order of the depositor, the cashier being duly authorized to issue such receipt, in an action by the depositor against the bank for the value of the property so deposited, a *prima facie* case for the plaintiff was made out by introducing the receipt in evidence and proving a failure to deliver to the plaintiff on his demand the property therein described, and the burden was thus cast upon the defendant of showing it had exercised at least slight diligence in the care and keeping of the property.

2. Where in such a case it appeared that the property so deposited was stolen by the cashier himself, the bank, even if it exercised due diligence in selecting him, was not discharged from liability unless it affirmatively showed further that it had not been guilty of gross negligence in retaining the cashier in office after it knew, or ought in the exercise of slight diligence to have known, that he was, or had become, unworthy of trust; and it does not show this by merely proving that up to a given time, three or more years previous to the discovery of the theft, his reputation was good and that "he stood in the community for honesty and integrity as high as any man." In view of the fact that he had actually stolen the property in question, it was incumbent upon the bank to show that during the whole term of the bailment it had exercised at least a slight supervision of him, and that in so doing no indications of dishonesty or other reason for distrusting him had appeared.

3. The court was right in refusing by its charge to make the determination of the question, whether or not the bank observed that degree of diligence which was due to the plaintiff, dependent upon the question whether or not, under similar circumstances, it trusted its cashier with its own property of like kind. What the bank ought to have done in order to come up to the measure of diligence required by law, cannot be arrived at by showing what it actually did in other matters relating to its own affairs.

4. The case, upon its substantial merits, is controlled by the propositions above announced; the requests to charge were, so far as consistent with the law of the case, covered by the general charge; the verdict, under the evidence, was right; and in none of the grounds of the motion for a new trial does cause for a reversal of the judgment below appear.

February 18, 1895.

*Assumpsit.*  Before Judge MacDonell.  City court of Savannah.  February term, 1894.

Erwin, duBignon & Chisholm and Barrow & Osborne, for the bank.  C. N. West and J. R. Saussy, *contra.*

Lumpkin, Justice.

The case now before us is quite similar to that of the *Merchants National Bank of Savannah* v. *Guilmartin* (88 *Ga.* 797, s. c. 93 *Ga.* 503), in which this court dealt at length with the duties and liabilities incurred by a bank in accepting from one of its customers a special deposit under circumstances which, in law, would create a gratuitous bailment.  In view of the elaborate discussion of the subject then entered into, it will not be necessary in this opinion to again cite the numerous authorities in support of the rule that it is incumbent upon a bank, in order to vindicate its diligence where the loss of a special deposit occurs through the negligence or dishonesty of one of its employees, to show reasonable care and circumspection on its part both as regards the selection of such employee in the first instance, and as to his subsequent retention in a position of trust.  Our present endeavor will therefore be simply to show the application of this rule to the facts of the case at bar.

1. The plaintiff having satisfactorily proved authority on the part of the defendant's cashier to receive and receipt for the special deposit in question, a *prima facie* case was made out by then introducing in evidence the receipt given by the cashier, and proving a failure to deliver the property on demand.  Under section 2064 of the code, the burden would thus be cast upon the defendant of showing it had exercised at least slight diligence in the care and keeping of the property.

2. The defendant sought to escape liability, on the ground that the loss of plaintiff's property was sustained through no negligence on its part, but was due solely to

the wrongful conduct of its defaulting cashier, who had embezzled not only the special deposit of the plaintiff, but also a considerable amount of valuable property belonging to the bank itself. In support of this defense, evidence was introduced to show that all requisite diligence had been observed in the selection of the cashier; that he had remained in the service of the bank many years, and had gained the implicit confidence of its managing officers; and that up to about three years previous to the discovery of the theft, his reputation was not merely good, but "he stood in the community for honesty and integrity as high as any man." No definite account, however, was given of the cashier, either as to his reputation or conduct, during the three years next preceding the discovery of his defalcation. It does not appear that during this period any effort was made on the part of the officials of the bank to inquire into or even casually scrutinize the conduct or habits of the cashier and determine for themselves his true character for honesty and integrity, or to exercise even a slight supervision over the important affairs with which he was entrusted. On the contrary, it would seem that they allowed themselves to be lulled into a state of tranquil inactivity by the sense of fancied security they derived from the assumption, that as he had in the past proved faithful to his trust, he must surely remain equally trustworthy in the future.

In the argument before us it was earnestly insisted by counsel for the plaintiff in error, that the officials of the bank had done all that could reasonably be expected of them in regard to informing themselves as to the real character of the cashier; for, as was argued, it having been once definitely ascertained by them that his reputation for honesty and integrity was above suspicion, they had a right to rely upon the presumption of law that he would remain honest and reliable. While this contention is

ingenious and was strongly stated, it cannot be accepted as sound. Presumptions of this kind are raised by law as mere rules of evidence, and have no application whatever to the conduct of men in the ordinary affairs of life; being designed merely to expedite and assist judicial investigation, and not being intended to influence or justify the acts, or omissions to act, of those upon whom is devolved the performance of legal duties, nor to set up a standard by which their diligence shall be measured and tested. The application of these rules of evidence in the conduct of every-day business affairs would often lead to absolute absurdities. For instance, how could it be said that a banker, implicitly relying upon the vague presumption of law that every one is honest until the contrary is shown, would be justified in piling up money entrusted to his care in the middle of the street, and leaving it there to take care of itself?

We cannot reach the conclusion that the showing of diligence made by the defendant in the present case reasonably met the requirements of the law. The rule, as laid down by the Supreme Court of the United States in Preston v. Prather, 137 U. S. 604, and as universally recognized, is that: "Persons depositing valuable articles with banks for safe-keeping without reward, have a right to expect that such measures will be taken as will ordinarily secure them from burglars outside and from thieves within; that whenever ground for suspicion arises, an examination will be made to see that they have not been abstracted or tampered with; that competent men, both as to ability and integrity, for the discharge of these duties will be employed; and that they will be removed whenever found wanting in either of these particulars."

The requirement that not only must due diligence be observed in selecting a cashier in the first place, but that some degree of supervision over him, with a view to ascertaining whether he should be retained, ought to be

exercised, is by no means a harsh one. Indeed, the rule of diligence applicable to banks is a very material modification in their favor of that governing ordinary bailees. Usually, where a bailee is entrusted with valuable property, he cannot shift his responsibility of accounting for it by showing that a wrongful conversion of the property was committed by another person to whom he delegated the duty imposed upon himself alone; for, as a general rule, he would be held to have employed such other person at his own peril, and every act of his agent would, in law, be the act of himself.

It is only that the law looks to the intention of the parties, where property is deposited with a bank for safe-keeping, that the strict rule as to bailments is relaxed, and a bank is allowed to discharge itself from liability by showing that, although loss occurred through the dishonesty of its agents, it had itself exercised due care and circumspection both as to their selection in the first place, and as to their retention in office thereafter. A corporation can act only through its agents; and it is evident that when a person makes a special deposit with a bank, he understands that his property must, of necessity, be placed in the keeping of employees in the service of the corporation. Therefore, he is held to tacitly agree that he will not attempt to hold the bank responsible for loss, if it in good faith takes all reasonable precautions in having suitable and competent agents to discharge the trust delegated to it. However, it is not true that, in such case, the depositor consents that the *duty* raised by the bailment may be shifted upon the shoulders of persons other than the bailee; this duty remains owing by the bailee alone. The depositor simply assents to the employment by the bailee of agents to aid it in the performance of such duty; the effect of which is merely to change the test of liability resting upon the bailee in case of loss.

The court below fully, but concisely, charged the jury as to the manner in which the defendant could vindicate its diligence in regard to the employment and retention of its cashier. The only possible objection to the charge we have been able to discover is, that the judge instructed the jury, in effect, that it was incumbent on the bank to show that during the whole term of the bailment, it had exercised at least a slight *supervision* over its cashier, and that in so doing no indications of dishonesty, or other reason for distrusting him, had appeared. After careful reflection, we feel safe in reaching the conclusion that this was not stating the rule too strongly against the defendant. The duty imposed by law upon a bank to remove from its service an employee who has become wanting either in ability or integrity, necessarily comprehends the incidental requirement of maintaining a reasonable surveillance or supervision over such employee; else, how is the bank to know when such duty of removal arises? Certainly, where a bank is called upon to explain its non-observance, it cannot be deemed a sufficient answer that the bank failed to comply with this duty simply because it was not aware that the time for its observance had arrived, when it was within the power of the bank, by the exercise of but slight diligence, to have fully informed itself that the necessity to act, and to act promptly, was at hand. The duty of a bailee to provide competent agents to care for the property of the bailor, may be analogized to the similar obligation resting upon a master to provide suitable coemployees when a servant is expected to work in connection with others. This court recognized that a master's duty in this regard did not cease with simply' providing in the first place competent fellow-servants, when in *McDonald* v. *Eagle & Phenix Manufacturing Co.*, 68 *Ga.* 839, the rule was laid down that: "A principal is not liable for the negligence of a fellow-servant in the

same job, unless the principal himself was negligent in not using ordinary diligence in selecting the fellow-servant, *or in retaining him after knowledge of incompetency or negligence.*" Such is the rule which likewise obtains in many other jurisdictions. Thus, where an agent, competent and skillful at the date of his hiring, subsequently acquires the habit of intoxication, the master is guilty of negligence if he retains such agent with knowledge of that fact: Laning *v.* New York Central R. R. Co., 49 N. Y. 521; Chapman *v.* Erie Railway Co., 55 N. Y. 579; Huntington & Broad Top R. R. Co. *v.* Decker, 84 Pa. St. 419; Ohio & Miss. Ry. Co. *v.* Collarn, 73 Ind. 261. And mere lack of actual knowledge of the servant's unfitness will not necessarily excuse the master; he cannot shut his eyes and claim exemption from liability, but must use the proper degree of diligence in keeping informed of the servant's habits and conduct. In Gilman *v.* Eastern Railroad Corporation, 10 Allen, 233, it was held, "if the switchman was an habitual drunkard, and this fact was known, or ought to have been known, to the corporation, and the injury resulted from his intoxication, the corporation is responsible." The same rule was announced in Chicago & Alton R. R. Co. *v.* Sullivan, 63 Ill. 293, Scott, J., saying: " Whether O'Keefe was a careful and competent man when he was first employed by the company, is not now a material inquiry. The controlling question is, whether he was an unfit person for his position at the time of the injury to Sullivan, and whether the company knew of his incapacity, or could have known it by the exercise of reasonable diligence." Certainly, it is all important that a bank should keep a reasonable supervision over such of its employees as occupy positions offering the temptation and the means to do wrong; for, as already intimated, without the maintenance of some surveillance, the duty of removing such employees when they

become deficient or unreliable could seldom be known or performed until too late to shield from loss the persons for whose protection the duty is imposed by law.

3. The fact that the defendant bank entrusted its own money and other property to the safe-keeping of its defaulting cashier, and in consequence itself suffered a heavy loss through his peculations, is one which the jury might very properly consider in arriving at a conclusion concerning the good faith and diligence observed by the bank's officials. However, this solitary fact could not properly serve as the test upon which the liability of the bank should be made to depend. What the bank ought to have done in order to come up to the full measure of diligence required by the law, could not be arrived at by showing simply what it actually did in other matters relating to its own affairs. Indeed, the officials of the bank might have been grossly negligent concerning the care bestowed upon its own property; and it could not excuse its negligence in regard to the duty owing to its customers, by showing it had been equally negligent in failing to properly look after its own affairs. The question is not a new one, but has been repeatedly passed upon by other courts of unquestionably high standing, as came to the notice of the writer when he made a thorough and laborious research of the authorities preparatory to writing an opinion in the *Guilmartin* case when it made its first appearance before this court. See 88 *Ga.* 797. We confidently assume that our ruling upon this question will be readily accepted as correct without further citation of authority.

4. In none of the numerous grounds of the motion for a new trial filed by the plaintiff in error, have we discovered error which would require or justify a reversal of the judgment of the court below denying another hearing. We cannot attempt the laborious task of dealing specifically with each of the alleged errors com-

v 95-26

plained of, and have confined this discussion to such questions only as control the case upon its substantial merits. As will have been seen by the foregoing brief but exhaustive statement of the evidence relied on by the defense to rebut the *prima facie* case of liability made out by the plaintiff, the defendant bank utterly failed in its attempt to prove due compliance with the requirements of the law as to diligence. Indeed, under the evidence submitted upon this issue, which was the main defense relied on by the bank, the jury would not have been warranted in finding other than they did. As to all other issues involved in the case, the verdict of the jury is amply sustained by the record before us, and could not properly be set aside.

> *Judgment on main bill of exceptions affirmed.*
> *Cross bill of exceptions dismissed.*