No. 26,490.

SUSAN L. MILLER, as Administratrix, etc., *Appellee*, v. THE VIOLA STATE BANK et al., *Appellants*.

SYLLABUS BY THE COURT.

1. BANKS AND BANKING — *Special Deposit — Liability for Loss by Absconding Cashier.* Where a bond is left with a bank for safe-keeping, and the cashier, who manages the bank, is the only person in charge, transacts all its business and runs it as if he·were the owner, absconds with it leaving no record concerning it, the bank is liable to the owner of the bond for 'its value, irrespective of any showing of negligence on its part in relation to employing, retaining or supervising the cashier.

2. SAME—*Negligence—Evidence.* Assuming in the situation presented in the foregoing paragraph that in order for the owner of the bond to recover from the bank he is required to introduce evidence tending to show such negligence on the part of the bank, that requirement is met by the evidence that the cashier for several years before he absconded had managed the bank, transacted all its business, and run it as if he were the owner.

3. SAME—*Special Deposit—Liability for Misappropriation by Cashier.* Under the circumstances stated in the foregoing paragraph the bank is held liable for the funds of a depositor who gave the cashier checks against it with which to purchase bonds, for which he never received any return.

4. SAME—*Insolvency—Preferred Claims.* Claims of the kind indicated in the foregoing paragraphs against the assets of an insolvent bank are held not entitled to preference over ordinary debts, for want of evidence showing the money lost by the claimant to have augmented the assets in the hands of the receiver.

Appeal from Sedgwick district court, division No. 2; THORNTON W. SARGENT, judge. Opinion filed June 12, 1926. ·Affirmed as to general claim; reversed as to preference.

Banks and Banking, 7 C. J. pp. 643 n. 18, 750 n. 60; 1 L. R. A. n. s. 252; 3 R. C. L. 563.

13—121 KAN.

*Paul J. Wall, Allen B. Burch* and *Roger P. Almond,* all of Wichita, for the appellants.

*John W. Adams, William J. Wertz* and *George Adams,* all of Wichita, for the appellee.

The opinion of the court was delivered by

Mason, J.: On August 31, 1921, James Miller brought an action against the Viola State Bank seeking a recovery on two causes of action. He died during the litigation, and his administratrix was substituted as plaintiff. The bank was closed on October 20, 1921, and a receiver, subsequently appointed, has been made a defendant. On each cause of action a preferred claim was asserted and allowed. The receiver appeals, and contends not only that the claims are not entitled to a preference, but that they do not constitute any charge whatever against the bank or its assets. For convenience of statement the original claimant will be spoken of as the plaintiff.

The first cause of action is based on these facts: The plaintiff, having $1,300 on deposit in the bank, drew checks for that amount payable to the bank and gave them to the cashier to buy government bonds for him; the checks were charged against the plaintiff's account, but so far as he could learn no bonds were ever purchased, and he never received anything for his money.

The second cause of action is based upon the fact that the plaintiff, having purchased elsewhere a government bond for $1,000, left it with the cashier for safe-keeping by the bank, and has never been able to recover it or its proceeds or value. The cashier absconded October 4, 1920.

1. With respect to the latter cause of action the receiver makes this argument, which is also urged as applying in principle to the other as well:

The bank's relation to the bond left by the plaintiff with the cashier was that of a gratuitous bailee. It was not liable for the theft of the bond by the cashier unless it had failed to use proper diligence to ascertain whether he was honest, and otherwise to guard against such a loss. On this issue there was no evidence either way. If the cashier stole the bond (as the record seems to show) he did not do so in his character as cashier, but personally; the act was not done in the course of the performance of his official duties and the rule of *respondeat superior* does not apply.

This contention in its general scope is supported by much au-

thority. (3 R. C. L. 562, 564; 7 C. J. 643, 644, note f; 6 C. J. 1123, note 79; 1 Morse on Banks and Banking, 5th ed., § 102, e, h, § 201.) In a carefully considered case it was said:

". . . The cases hold that the act of the cashier by which he appropriates exclusively to himself a gratuitous special deposit in the bank, is not an act done in the bank's business and within the scope of his employment. The custody of the deposit implies no act to be done, but only a mere continuance of possession until a return of the property is demanded. The cashier had nothing to do about it except suffer it to remain in a safe place of deposit. Consequently, in taking it to himself he is said to 'step aside' from his employment to do an act for his personal gain, regardless of the business for which he was engaged. Such an act is lacking both in the rendition of, and in the intent to render, any service to the employer. The cashier does not, as a matter of fact, act with the bank's authority, and furthermore does not essay or even profess to act in its behalf. He represents nobody but himself. He throws off all allegiance to his master, and takes the part of a common enemy to all concerned. He becomes the same as a stranger from without who by robbery, burglary or stealth, deprives the bank of a special deposit; and the authorities hold that the bank is not chargeable with such a loss, in the absence of gross negligence, but is liable if grossly negligent [citing cases]. Such a fraud, by a well-selected servant duly supervised, is not to be imputed to the bank as its own fraud. The bank cannot be said to have stolen when there is on its part no participation in the theft, no appropriation and no intent to appropriate the property." (*Merchants Bank v. Guilmartin*, 88 Ga. 797, 801.)

We think this reasoning, and the general rule in support of which it is advanced, are inapplicable to the facts of the present case. Here the cashier was not a mere servant. He was not only an officer of the bank, but for several years had been its manager, the only person in charge, the person "transacting all of its business" and running it "simply as if he was the owner." It was for him to determine in behalf of the bank just where the bond should be kept, how it should be safeguarded, and what steps should be taken in regard to it. If he had by a blunder delivered it to the wrong person the bank would have been liable. If he did the same purposely its liability could hardly have been less. If by a reckless exposure of the bond he had caused its loss by the theft of some one else the bank would clearly have been liable to the owner. If he had gone further and connived at such a theft, his wrongful intent could scarcely have lessened the bank's responsibility. His duty to the bank was to care for the bond—to handle it in such manner that it would be forthcoming when demanded. He did not do this. He handled it so that its return by the bank became impossible. He violated his

obligation to the bank, and at the same time the bank through him violated its obligation to the plaintiff. The bank is liable not because he committed a crime, but because he failed in the duty which as the representative of the bank he owed the plaintiff.

The act of the cashier and a clerk in extracting a part of the contents of a keg of specie left with a bank for safe-keeping has been held not to have been that of the bank, but in that case the looters were not themselves charged with the care or control of the coin. (*Foster & al., Executors, v. The Essex Bank*, 17 Mass. 478.). It was mentioned in the opinion that the directors represented the bank (p. 508), and that "if the cashier had any official duty to perform relating to the subject, it was merely to close the doors of the vault, when banking hours were over." (p. 511.)

In an English case (which cites and quotes from that just referred to), where a bank was held not liable for a theft of a special deposit committed by its cashier, the stolen debentures were in a box to which the customer had access and of which he kept the key, and which was placed with others in a strong room of which the cashier had one key. The manager and a director, rather than the cashier, who was also the accountant, appear to have been the chief executive officers. (*Giblin v. McMullen*, 16 E. R., Reprint, 578.)

An intimation that the doctrine of the two cases just referred to is obsolete appears to be intended by this language of the federal supreme court, which is followed by descriptions of the Massachusetts and similar cases as illustrative of the proposition:

"The doctrine of exemption from liability in such cases [that is, those involving the liability of gratuitous bailees] was at one time carried so far as to shield the bailees from the fraudulent acts of their own employees and officers, though their employment embraced a supervision of the property, such acts not being deemed within the scope of their employment." (*Preston v. Prather*, 137 U. S. 604, 609.)

However, an instance of its recent application is to be found in *Weissburg v. People's State Bank of N. K.*, 284 Pa. 260, where a bank was held not liable for the conversion by its president of certificates left for safe-keeping in his control, his custody being assumed to be that of the bank. But it is to be noted, as has already been indicated, that in the Massachusetts and English cases the delinquent official was not definitely charged with the supervision of the property.

2. If it should be assumed that the bank could not be held liable

unless upon the ground that it failed to exercise sufficient diligence
to guard against such a loss, the judgment could still be upheld.
Where in such a case the bank has the burden of proving that it used
due diligence, the requirement is held to be met only by showing that
it not merely used sufficient care in selecting a cashier, but that it
exercised some degree of supervision over him, to ascertain whether
he should be retained; that "during the whole term of the bailment,
it had exercised at least a slight supervision over its cashier, and
that in doing so no indications of dishonesty, or other reason for
distrusting him, had appeared." (*Merchants Bank v. Carhart*, 95
Ga. 394.) The majority rule is that the burden of showing want of
care is on the bailor, although a number of courts hold to the con-
trary. (Note, 26 A. L. R. 232, 238.) Assuming the burden here to
have been on the plaintiff to show the bank failed to use due care
as to the supervision of its cashier, we think the requirement was
met by the testimony that for a number of years he managed the
bank, being the only person in charge there, transacting all its busi-
ness and running it simply as if he were the owner—testimony which
may of course be considered in its most favorable aspect, with all
permissible inferences against the defendants.

In a somewhat analogous situation it has been said:

"The directors had substantially surrendered to Layton [the cashier] the
performance of their duties, and permitted him to conduct the affairs of the
bank almost without interference, supervision or oversight on their part. They
had created a practically one-man power, and lodged that power in him. He
was thus enabled to carry on his fraudulent operations without their actual
knowledge. By the exercise of ordinary diligence on their part they would
have obtained knowledge of his irregularities. . . . The law requires of
directors the exercise of good faith and ordinary diligence and care in the
performance of their duties. These duties include that of reasonable oversight
and supervision." (*Lowndes v. City National Bank*, 82 Conn. 8, 16.)

Whether the negligence of the bank in this respect, if it existed,
was of such degree as to form a basis for liability—that is, whether
the bank exercised due care in view of all the circumstances—
is a question of fact to be determined like any other—"the so-called
distinction between slight, ordinary and gross negligence over which
courts have quibbled for a hundred years can furnish no assistance."
(*Maddock v. Riggs*, 106 Kan. 808, 190 Pac. 12.) "But gross negli-
gence in such cases is nothing more than a failure to bestow the care
which the property in its situation demands; the omission of the

reasonable care required is the negligence which creates the liability; and whether this existed is a question of fact for the jury to determine, or by the court where a jury is waived." (*Preston v. Prather*, supra, p. 608.)

3. With respect to the cause of action based upon the plaintiff's checks given to buy bonds and not accounted for in any way, we see no room to doubt the bank's liability. The most favorable view for the defendants would be that the plaintiff's money became a special deposit, subject to the same rules as the bond already considered, in which case this part of the judgment should be upheld on the same grounds as the one first considered.

4. We hold, however, that the plaintiff is not entitled to a preferred claim, for we find no evidence that the assets which reached the hands of the receiver were in any way increased by the fraud of which the plaintiff was the victim. The circumstance that the bank from a period prior to the plaintiff's deposits had assets of over $40,000, which passed into the hands of the receiver, does not tend to show that the plaintiff's money or its proceeds or results became directly or indirectly a part of the fund to be distributed, particularly as the cash and exchange that came to the receiver was but $835.92.

The judgment as to the allowance of a general claim against the bank and its assets is affirmed; to the extent of its allowing a preference it is reversed.

BURCH, J., dissents from the first paragraph of the syllabus and the corresponding part of the opinion.