## LIQUIDATION OF EXCHANGE BANK, In Re

Ohio Appeals, 6th Dist, Wood Co

No 535.   Decided Jan 9, 1933

Gilbert Bettman, Attorney General, Columbus, and Floyd Coller, Bowling Green, for Superintendent of Banks.

A. G. and R. E. Fuller, Findlay, for A. L. Shoup.

**RICHARDS, J.**

A motion has been filed by the claimant to dismiss the appeal on the ground that the case is not one in chancery and that therefore this court does not have appellate jurisdiction thereof. The contention of Shoup is that he deposited with the bank for safekeeping and to hold for him in trust $1500.00 in Liberty Bonds which the bank received pursuant to §710-110 GC, and he seeks by this proceeding to fasten a trust on the assets of the bank and to require an allowance of the same as a preferred claim. This court is of the opinion that the action is in chancery within the constitutional provision and is therefore appealable.

The Superintendent of Banks further contends that Mr. Shoup's action is barred under §710-92, GC, because not brought within six months after service of the notice of rejection of the claim. The written proof of claim has endorsed thereon a formal rejection by the Superintendent of Banks dated February 19, 1932. Notice of this rejection was served on the claimant very shortly after its date. His answer and cross-petition setting up his claim was filed in court on June 7, 1932, less than four months after the rejection. However, there was introduced in evidenre a letter dated November 12, 1931, directed to the claimant, and informing him that his claim should not be allowed as a preferred claim and that it had been rejected as such. That letter is signed by W. J. Skehan, Deputy Superintendent of Banks, by Leo Buckenmyer, but the authority of Buckenmyer is nowhere shown. The letter appears to have been received by the claimant shortly after its date, but Shoup testifies that this letter was received following the first presentation of the claim and that he afterwards resubmitted the claim to the Superintendent of Banks for his approval. Some time after its resubmission, the original claim was returned to him with the final rejection endorsed on it dated February 19, 1932, signed by I. J. Fulton, Superintendent of Banks, by W. C. Miller, Deputy Superintendent in charge of the Exchange Bank. It will be observed that the first rejection does not in any way identify the claim which had been presented except that it was a claim presented by A. L. Shoup. The evidence shows that the claim based on the bonds which had been misappropriated was submitted to the Superintendent of Banks a second time and was further considered and finally rejected within less than six months prior to the time the action was brought, and the claim is therefore not barred by limitation.

It is insisted on behalf of the Superintendent of Banks that under the provisions of §710-80, GC, there can be no preference against the assets of an unincorporated bank which comes into the hands of the Superintendent of Banks for liquidation. This contention is not well-founded. The statute provides that depositors in an unincorporated bank shall have a first lien on the assets of the bank in case it is wound up, and for any balance remaining unpaid they shall share in the general assets of the owners, alike with the general creditors. The statute is not very aptly drawn but it manifests an intent to fix the rights of depositors in a bank conducted by a partnership as distinguished from the rights of creditors of the individual partners and has nothing to do with the matter of preference.

Coming now to the merits of the case, the evidence discloses that during the World War Shoup purchased through the Exchange Bank $1600.00 in Liberty bonds. One of these bonds was for $100.00 and was registered, but bonds amounting to $1500.00 were coupon bonds, not registered. He deposited all the bonds with the bank for safekeeping, the business being transacted at the bank through the cashier, who placed the bonds in an envelope endorsed with the name of A. L. Shoup. The interest on these bonds as it came due was paid by the cashier to Shoup but he never thereafter saw the bonds except the $100.00 registered bond which was returned to him after the failure of the bank. The uncontradicted testimony shows that the coupon bonds of $1500.00, together with other bonds, were sold by the cashier to The Chase National Bank of New York, which bank forwarded a draft to the cashier for the amount of all the bonds sold, being a little more than $6500.00. This draft was deposited in the Exchange Bank by the cashier, who took a certificate of deposit in his own name for the amount, thus tracing the fund out of The Chase National Bank. The deposit was made when the draft was received and bears date of June 23, 1922. After the fund remained on deposit for about six months, the certificate was surrendered by the cashier, C. R. Campbell, and another certificate taken in his name for $5500.00. This operation was repeated many times, each succeeding certificate being for a lesser amount as sums were apparently drawn from the fund by the cashier. When the bank failed, there remained in its vaults only the amount of $1666.79, which went into the hands of the liquidating agent and this was the smallest amount of cash in the bank at any time after the bonds were misappropriated. No doubt can exist but that the proceeds of the bonds belonging to Shoup were criminally misappropriated by the cashier of the bank.

It is said, however, that the bank itself is not liable for such acts of the cashier in misappropriating a special deposit which is left for safekeeping without compensation if it used due care in selecting him. That may be the general rule applicable to such cases, but in this case an unincorporated bank was owned by partners and

the cashier was one of those partners, entrusted fully and solely with the conduct of its affairs, and the other partners paid no attention whatever to conducting its business, but left the cashier as managing officer. His act was in effect the act of the bank itself. It further appears from the evidence that the bank benefitted from the criminal conduct of the cashier in that when the bonds were sold the money was deposited in the bank by the cashier without interest and thus remained for a very long period of time, the bank reaping the benefit of the use of the money for its own purposes. Under these circumstances the bank is liable for the acts of its cashier.

Miller, Admx. v Bank, 121 Kans., 195, 48 A.L.R., 373;

. 3 R.C.L., 562, 564;

4 Michie, Banks and Banking, 201, §76b.

The evidence does not identify any particular property in which the funds received from the bonds were invested.

We find that Shoup is entitled to a preferred claim on the cash in the bank passing into the possession of Ira J. Fulton, State Superintendent of Banks. The precise amount to which he may be entitled can only be determined when claims of other preferred creditors, similarly situated, may be adjudicated, in accordance with **State ex v Fulton, Superintendent of Banks, 124 Oh St, 360, 362.**

Judgment and decree in favor of A. L. Shoup.

LLOYD and WILLIAMS, JJ, concur.