Leonard FAZIO, Plaintiff-Appellee,

v.

Alan BROTMAN, Defendant,

and

Prem Sahai, Defendant-Appellant.

No. 84–857.

Court of Appeals of Iowa.

May 28, 1985.

Bruce H. Stoltze of Brick, Seckington, Bowers, Swartz & Gentry, P.C., Des Moines, for defendant-appellant.

William W. Graham of Gamble, Riepe, Webster, Davis & Green, Des Moines for plaintiff-appellee.

Considered by OXBERGER, C.J., and DONIELSON and HAYDEN, JJ.

OXBERGER, Chief Judge.

An action for damages resulting from conversion was initiated by the plaintiff in this action. After finding for the plaintiff, one of the two defendants appeals, asserting errors by the court in submitting certain issues and evidence to the jury and in allowing several instructions. We find no error and affirm the trial court.

The defendant Alan Brotman had formed a partnership with the defendant who has appealed, Prem Sahai. On April 1, 1980, the business was incorporated and continued to be managed by Brotman. In August 1980 Leonard Fazio, the plaintiff, purchased silver coins worth $4998.40 from Brotman Investment Corporation, and left them in the safekeeping of the corporation. It was understood that Fazio could demand return of the coins at any time, although the standard corporate procedures including issuing a receipt were not followed. On October 4, 1980 Sahai conducted an inventory of all the property in the possession of the corporation. On October 6 Sahai took full control of the business. Fazio

unsuccessfully demanded in November 1980 that his coins be returned. After the Attorney General's office became involved, Fazio then sued Brotman for conversion of his coins. In a deposition Brotman stated that on October 4, 1980, he had seen Sahai rip open the bag containing Fazio's coins and place them with other merchandise. Sahai denies this ever happened. Fazio then included Sahai in the petition for relief.

After a jury trial, verdict was returned in favor of the plaintiff and against both defendants. It awarded actual damages of $2499.50 against both defendants, punitive damages of $10,000 against Brotman and $5000 against Sahai.

Sahai asserts on appeal the court erred in that: (1) evidence was insufficient to support submitting to the jury the issue of conversion by Sahai; (2) certain evidence relating to two other business transactions should not have been admitted; (3) the evidence was insufficient to warrant submitting the issue of piercing the corporate veil to the jury and the instruction on the circumstances necessary to pierce the corporate veil was erroneous; (4) the instructions on bailment were improper; (5) there should have been an instruction defining the phrase "acting within the scope of managerial capacity," and; (6) evidence was insufficient to warrant an award of punitive damages against Sahai.

This is an action at law and the scope of our review is limited to correcting errors of law. Iowa R.App.P. 4. The jury's findings of fact are binding on us unless not supported by substantial evidence. Iowa R.App.P. 14(f)(1).

## I.

The defendant claims the only evidence supporting the contention that Sahai converted the coins to his own use is the inconsistent and contradictory statements of his codefendant, Brotman. Sahai claims that up until the time he was sued by Fazio, Brotman had made no allegation of impropriety against Sahai. It was only after the lawsuit was brought against him that Sahai was implicated by Brotman. Sahai points out to the court several cases which indicate that when a statement by a witness is so self-contradictory and so impossible and absurd that it cannot be believed, it should be ignored by the court. *State ex rel. Mochnick v. Andrioli*, 216 Iowa 451, 453, 249 N.W. 379, 380 (1933); *Graham v. Chicago and North Western Railway Co.*, 143 Iowa 604, 613–14, 119 N.W. 708, 711 (1909). Sahai further states that contradictory statements cannot generate an issue of fact. *Mochnick* 216 Iowa at 453, 249 N.W. at 380. The cases cited by Sahai, however, are strictly limited. The court in *Graham* explained:

> This court has gone its full length to protect the right of jury trial against encroachment by the courts under any guise, and one of the rights of jury trial is the right to have the credibility of the witness determined by the jury. Generally speaking, there are no limitations upon this rule, but there are limitations upon the application of it. The testimony of a witness may be so impossible and absurd and self-contradictory that it should be deemed a nullity by the court. This court has seldom been confronted with a more marked case of the kind than is presented here. We are united in the opinion that it is our plain duty to so hold. To hold otherwise is such a case would make a farce of judicial proceedings. . . .

*Graham*, 143 Iowa at 615, 119 N.W. at 711. The court in *Graham* also emphasized there was no other corroborating evidence to support the witness's highly unbelievable statements. *Id.* at 614, 119 N.W. at 711. In *Mochnick* the court noted the rule applies when the witness's contradictory statements are the only evidence on the point. *Mochnick*, 216 Iowa at 453, 249 N.W. at 380.

This case is different from those cited by defendant for two reasons. First, the contradictory statement Sahai refers to does not go to the question of Sahai's involvement in the matter. The statement Sahai refers us to that Brotman originally

made was that the coins were put into the corporation's vault. At trial Brotman admitted they might never have made it into the vault. There is no indication in the record, and none can be pointed out by Sahai that Brotman stated Sahai was not involved in the conversion. Brotman's only statement on this point was that Sahai ripped open the bag of coins. In short, there is no contradictory statement on the key question of whether Sahai participated in the conversion.

■ Second, there is other evidence which tends to support the statement of Brotman. A former employee of the corporation, Donald Wells, gave testimony that indicated Sahai's main concern was in protecting his interest in the assets:

Q. On October 4th or October 6th—make it October 6th—did you think that Dr. Sahai after he took over the business, in your opinion that he wanted to make the company go, or do you think that he just tried to get as much assets as possible and close the company? A. In my opinion he wanted as many assets as he could get his hands on and wanted to close the company.

Q. Is that the reason why you left the employment of Brotman Investment Corporation? A. The main reason was that his actions as I said before about not either paying the people or returning their merchandise was the No. 1 reason.

Another employee, Ramona Lewis, confirmed that Sahai was suspicious of any prior transactions, to the point he would not honor certain previous transactions.

Sahai had also indicated to a business associate, Jack Wallace, that he was suspicious of any transaction prior to October 4, 1980:

Q. Have you ever had occasion to speak with Dr. Sahai about this matter—to speak with him as opposed to him giving a deposition? A. I spoke with him once.

Q. When was that? A. It was either late that November or December or sometime in January.

Q. And where did that conversation take place? A. It was pretty much like I said before, he wasn't going to return any of the material.

Q. Where? A. At their offices.

Q. At the Brotman Investment Corporation offices? A. Yes.

Q. Tell me what you said and what Dr. Sahai said as best you recall. A. That he wasn't going to return any inventory until he had his accountants completely go over the books to find out exactly who owned what, and he said, "If you did own them, we will be able to prove it through inventory records, etc., etc."

Q. He told you he wasn't going to release you said any inventory, is that what you meant? A. He wasn't going to release any of the material, any of the gold or silver inventory.

Wallace loaned two bars of gold to the Brotman Corporation and that property was never returned to him. Another individual, Clayton Ridgeway, testified he loaned silver to the corporation and it was never returned.

In a deposition of the defendant, Sahai indicated he considered the assets of the corporation his own. When asked about a note received from Brotman, he explained it was to cover items purchased by Brotman with funds borrowed "(f)rom the corporation, which was really my money." In addition, there was a considerable amount of corporate property which Sahai had treated as his own, and which we will discuss more thoroughly later. We find there was sufficient evidence in addition to any statements made by Brotman which would allow the jury to reasonably infer that Sahai converted the coins to his own use.

## II.

Sahai also says the transactions involving Wallace and Ridgeway should not have been allowed into evidence. He says they are not similar enough to the Fazio transaction to be allowed as evidence of a similar plan under Iowa Rule of Evidence 404(b). Specifically, the Clayton transaction was a

loan and not a bailment, and it was established in the Wallace transaction the items were in the corporation's possession, where here there was no document of proof of possession.

A decision as to whether other events are similar enough to the event in question to allow admission under the rule of evidence is a choice within the court's sound discretion. *Kunkle Water and Electric v. City of Prescott,* 347 N.W.2d 648, 653 (Iowa 1984). That decision will be reversed only upon a showing of abuse of the discretion. *Id.*

The comments of the advisory committee which accompany the rule indicate that is " '(n)o mechanical solution' in deciding when to admit evidence under the rule." 5A West, Iowa Rules of Civil Procedure Annotated: Rules of Evidence, p. 145 (1984). Instead, "The determination must be made whether the danger of undue prejudice outweighs the probative value of the evidence in view of the availability of other means of proof ..." *Id.*

In this instance we do not find the differences between the events significant. Rather, the prior transaction are probative in inferring that Sahai intended to keep certain assets left with the corporation. Any item of evidence tending to prove plaintiff's assertions will be prejudicial to a defendant, but we do not believe here the prejudice outweighs the probative value, and hold the evidence was properly admitted.

### III.

Instruction No. 7 set out the criteria for piercing the corporate veil. Sahai says it did not properly indicate that the veil will be pierced only when there are exceptional circumstances. The instruction should have indicated the corporation had to be formed primarily for the purpose of committing a fraud, he says, and that this is clearly not the case here. The instruction read in pertinent part:

The plaintiff has the burden of proof to establish by a preponderance of the evidence that the corporate veil may be pierced and the defendants found individually liable. The factors to be considered in considering whether the corporate veil should be pierced are as follows:

1. The corporation is undercapitalized;

2. The corporation lacks separate books;

3. The corporation's finances are not kept separate from individual finances or individual obligations are paid by the corporation;

4. The corporation is used to promote fraud or illegalities;

5. The corporation formalities are not followed; or

6. The corporation is a mere sham.

If, after considering the above factors, you find that the plaintiff has established by a preponderance of the evidence that the corporate veil should be pierced and the defendant Alan Brotman and/or the defendant Prem Sahai are individually liable, you will consider the extent of their individual liability.

The instruction tells the jury they can pierce the corporate veil only when there are exceptional circumstances and when any one of the six items is established. This accurately sets out Iowa law in this area. *Lakota Girl Scout Council, Inc. v. Havey Fund-Raising Management, Inc.,* 519 F.2d 634, 638 (8th Cir.1975); *Briggs Transportation Co. v. Starr Sales Co.,* 262 N.W.2d 805, 810 (Iowa 1978).

In addition, the case cited by defendant for his proposition indicates the veil will be pierced when the corporation is "used" to commit a fraud. *State ex rel. Miller v. Internal Energy Etc.,* 324 N.W.2d 707, 714 (Iowa 1982). Our courts have also noted that fraud need not be shown when it is established the corporation is a "mere sham." *Team Central, Inc. v. Teamco, Inc.,* 271 N.W.2d 914, 923 (Iowa 1978). The premise behind piercing a corporate veil is that the fiction that a corporation is an entity separate from the persons comprising the corporation will be ignored where to do otherwise "would pro-

duce injustices and inequitable consequences." 18 C.J.S. *Corporations* § 6 (1939). The fiction is to be ignored where "the corporate cloak is utilized as a subterfuge to defeat public convenience, to justify wrong, or to perpetuate fraud." *Id.* We find no error in the court's instruction to the jury.

■ We also find the court had ample justification for submitting the issue to the jury. The corporation had few corporate records apart from the articles of incorporation, had no signed bylaws, and no stock was issued. No meetings of shareholders or directors occurred until after October 4, 1980. An audit showed there was inadequate contribution of assets to cover the $10 par value shares which both defendants considered issued. Corporate assets and funds were used to pay for Brotman's wedding expenses, to purchase a $16,500 diamond ring for Brotman's wife, and to purchase real estate transferred to Sahai personally. Sahai also took a car telephone belonging to the company and sold another car, using the proceeds to pay a company debt owed to him. In order to make up for a lack of assets, Brotman executed several promissory notes to Sahai. In determining the sufficiency of evidence, we view the facts available to decide if a question has been raised to be presented to the jury. *Powell v. Khodari-Intergreen Co.*, 334 N.W.2d 127, 132 (Iowa 1983). After a review of the evidence presented we find sufficient evidence to generate a jury question.

## IV.

The next error assigned by Sahai goes to the propriety of Instruction Nos. 12A, 13, 14, 15, and 16. He says the instructions do not indicate that: (1) a bailee does not warrant the honesty of his employees; (2) that a conversion will not be found on failure to redeliver when the goods are lost or destroyed through no fault of the bailee; (3) the burden of proof was not properly stated; and (4) conversion and bailment were not tied together.

On Sahai's first complaint, he states cases indicate a bailee is not liable when his employees convert the property unless there was some negligence on his own part. *See Sandman v. Hagar*, 261 Iowa 560, 154 N.W.2d 113, 117 (1967). Sahai also attacks plaintiff's reliance on the case of *Miller v. Viola State Bank*, 121 Kan. 193, 246 P. 517 (1926) which held a bailee bank liable for conversion committed by its manager. Defendant says this case is not in line with Iowa law and should not be followed.

■ We disagree with defendant for several reasons. First, we note that the jury was instructed that the acts of Brotman must have occurred within the scope of his managerial capacity. This does not indicate that the bailee warrants the honesty of his employees and instead indicates the opposite.

Second, we find it difficult to separate Sahai's liability as employer of Brotman. Given the facts of this case, it appears more likely that both men were bailees, since Brotman accepted the responsibility for the coins prior to Sahai taking over and was a bailee at that time. When Sahai took over, he ran the operation and was bailee of the coins himself. This is confirmed by the statement of Sahai's attorney made during his objections on the instructions now in question. He stated:

> I further object on the basis that there is a failure to define what it means that the Defendant Alan Brotman was employed by Prem Sahai and the facts of this case it is clear that the Defendant Prem Sahai at no time employed Alan Brotman. To give an instruction of this nature is to confuse the jury and to place into existence something that by its very nature does not exist.

The *Miller* court reasoning is not necessarily opposite Iowa law, since it merely indicates a similar proposition; that a person in a managerial capacity becomes the bailee since a bank or corporation can only act through its managers:

> Here the cashier was not a mere servant. He was not only an officer of the bank but for several years had been its man-

ager, the only person in charge, the person 'transacting all of its business,' and running it 'simply as if he was the owner.' It was for him to determine in behalf of the bank just where the bond should be kept, how it should be safeguarded, and that steps should be taken in regard to it. If he had by a blunder delivered it to the wrong person, the bank would have been liable. If he did the same purposely, its liability could hardly have been less.... If he had gone further and connived at such a theft, his wrongful intent could scarcely have lessened the bank's responsibility. His duty to the bank was to care for the bond—to handle it in such a manner that it would be forthcoming when demanded .... He violated his obligation to the bank, and at the same time the bank through him violated its obligation to the Plaintiff. The bank is liable, not because he committed a crime, but because he failed in the duty which as the representative of the bank he owed the Plaintiff.

*Miller* at 195–96, 246 P. at 518. In noting that some authorities delve more deeply into the question of whether an employee has acted in the scope of employment regarding the bailment, while more modern authorities hold respondeat superior cannot be used to relieve the bailee of liability, it has been stated, "it probably does no violence to either rule to regard the bailee as liable for an employee's torts that violate some duty of the bailment, the performance of which was at the time entrusted to the employee, on the theory that such acts are within the scope of his employment." 8 Am.Jur.2d *Bailments* § 237 (1980).

We find the instruction properly indicated that if the jury found Brotman to be acting in a managerial capacity, Sahai could be held liable if the other factors listed also existed.

■ We find no error in any part of the remaining instructions. Contrary to Sahai's indications, Instruction No. 15 indicates:

A gratuitous bailee of personal property is not an insurer of the safety of such property while in the possession of such bailee. This means that he is not liable merely by reason of the fact that such personal property is (lost) while in his possession. Such a bailee is liable therefor, if at all, only in the event he has failed to exercise that degree of care for such property that would be exercised by men of prudence in keeping property of like value under like circumstances.

This instruction indicated the bailee was not responsible simply because the property was lost. In addition, this instruction, along with Instruction No. 16, used language from Uniform Jury Instruction 12.7 and adequately stated the burden of proof. *Bowen v. First National Bank*, 200 Iowa 40, 41, 203 N.W. 569, 570 (1925); *Kubli v. First National Bank of Pleasantville*, 199 Iowa 194, 195, 200 N.W. 434, 435 (1924).

## V.

■ We also disagree the court erred in not defining "acting within the scope of managerial capacity" in Instruction No. 12A. As defendant concedes, only when a technical definition of words differs from the common use of those words, should the jury be instructed on the technical meaning. *Overhouser v. American Cereal Co.*, 128 Iowa 580, 585, 105 N.W. 113, 115 (1905). Further, the supreme court has noted:

In *Law v. Bryant Asph. Co.*, 175 Iowa 747, 753, 157 N.W. 175, 178, 7 A.L.R. 1189, this court stated as follows: "It is probably true that no instruction or charge to a jury has ever been drawn with such perfect clearness and precision that an ingenious lawyer in the seclusion and quiet of his office with a dictionary at his elbow cannot extract therefrom some legal heresy of more or less startling character. The real test of the meaning and effect of an instruction for the purpose of review by an appellate court ought to be, and we think is, the idea which the language objected to is fairly calculated to convey to the minds of jurors drawn from the ordinary walks of life; and the fact that, upon a minute

technical or hypercritical analysis some other interpretation can be placed thereon, may be disregarded."

Then in the case of *In re· Will of Smith,* 245 Iowa 38, 40, 60 N.W.2d 866, is this statement relative to jury instructions: "We are not concerned with the niceties of the English language, but only with whether the jury properly understood the terminology used by the court."

*Henneman v. McCalla,* 148 N.W.2d 447, 456–57 (Iowa 1967). A somewhat similar phrase, "scope of employment" has been defined as including acts "necessary to accomplish the purpose of the employment and is intended for such purpose, although in excess of the powers actually conferred." *Sandman,* 154 N.W.2d at 117. We find that looking at the evidence presented in the case and reading this instruction as a whole along with the other instructions given, the jury understood the terminology used by the court.

### VI.

 Finally, Sahai insists that punitive damages should not have been awarded against him, contending that *Briggs Transportation Co. v. Starr Sales Co.,* 262 N.W.2d 805 (Iowa 1978) indicates a stockholder and officer who does not play an active part in the incorporation or corporate business cannot be held liable for damages when the corporate veil is pierced. The court in that case also stated that once the veil is pierced, the officer ordinarily cannot escape personal liability. *Id.* at 811. Sahai also relies on *Briner v. Hyslop,* 337 N.W.2d 858, 865 (Iowa 1983) which indicated an innocent stockholder is usually not held liable for punitive damages.

 This argument ignores the fact that before punitive damages could be awarded, the jury was told it would first have to find the corporate veil should be pierced, and then find that Sahai acted in a wanton and reckless manner. The jury could not have awarded damages if it determined Sahai was an innocent shareholder, with no active part in the corporation.

We find no error of law in the action below and determine the fact finding of the jury is supported by sufficient evidence.

AFFIRMED.