[Civ. No. 2233. Third Appellate District.—July 29, 1921.]

## A. R. SITTIG, Respondent, v. JAMES M. RANEY, as County Auditor, etc., Appellant.

[1] COUNTIES—REPAIR OF ROADS—EXPENDITURE LESS THAN ONE THOUSAND DOLLARS—CONSTRUCTION OF CODE.—The provisions of subdivision 11 of section 2643 of the Political Code, as amended in 1919, requiring the board of supervisors of a county to let all contracts for certain specified work on the roads of the county only after proposals for doing such work have been fully adver-

tised for and accepted in cases where the expenditure is to be more than one thousand dollars, have no application where the cost of the work is less than or does not exceed such amount, and in such cases the work is to be done by the supervisor of each supervisorial district acting as *ex-officio* road commissioner under section 2645 of such code, without the observance of the formalities required by section 2643 and without the necessity of any bond.

[2] ID.—CLAIM FOR CRUSHED ROCK—COMPLAINT TO COMPEL ISSUANCE OF WARRANT—OMISSION OF WORD "SPREAD"—VARIANCE NOT FATAL. No fatal variance exists between a claim for "340 yards rock crushed and hauled and spread on Orndoff Street," presented to and allowed by a board of supervisors, and a claim pleaded in a complaint to compel the county auditor to draw his warrant therefor which omits the words "and spread," where the board in acting upon the claim understood the sense in which the word "spread" was used.

[3] ID.—IRREGULARITIES IN PRESENTATION OF CLAIM—CURE BY ALLOWANCE.—The failure of a claimant to attach to his claim against a county for crushed rock used in road repair work an affidavit stating that the items set out in the claim are true and correct and that no part thereof have been paid, as required by section 4076 of the Political Code, and the failure to annex to the claim a certificate by the county clerk or the county auditor as to the exactness of the computations of the items, as required by subdivision 3 of such section, constituted irregularities, which upon an allowance of the claim by the supervisors were thereby cured.

APPEAL from a judgment of the Superior Court of Napa County. Henry C. Gesford, Judge. Affirmed.

The facts are stated in the opinion of the court.

Clarence N. Riggins for Appellant.

Frank L. Coombs, Nathan F. Coombs and John T. York for Respondent.

HART, J.—The plaintiff petitioned the superior court of Napa County for a writ of mandate to compel the defendant, as auditor of said county, to issue to him his warrant on the treasurer of said county for the sum of $873.80 for services and materials alleged to have been performed and furnished by him for road repair purposes in said county.

Judgment awarding a peremptory writ of mandate as prayed for in the petition was given and entered, and from said judgment the defendant, auditor, appeals.

The claim which is the foundation of this suit is for the furnishing and delivery, upon the order of the supervisor, as *ex-officio* road commissioner, of supervisorial district No. 1, in Napa County, of crushed rock at certain points on a road known and designated as ''Orndorff Street,'' in said district and county, for use in repairing said road. ''Orndorff Street'' is a road lying outside and terminating or beginning at one end of the municipal limits of the city of Napa, and, as the witnesses described it, ''is a little piece of road lying between the Brown's Valley road and West Linn Street,'' the latter street being within and running up to the ''end of the city limits.''

The complaint sets out the facts respecting the ordering of the rock by Mark Hein, supervisor of supervisorial district No. 1, the filing of the claim with the defendant, as auditor, etc., the presentation of said claim by said auditor in due legal form to the board of supervisors, the consideration and allowance of said claim by said board and the ordering of the payment of the same by the drawing of a warrant therefor by said auditor against the county treasurer of said county, payable from road district No. 1 fund, the indorsement on the claim by the clerk of said board of his certificate certifying that the claim had been allowed in the sum of $873.80 by said board, at a regular meeting thereof, and the approval in due form of said claim by Mark Hein, supervisor of said supervisorial district No. 1, the delivery of said claim and warrant form, ''and the said attached papers,'' with the said certificates indorsed thereon, to the said auditor, and alleges that the auditor has ever since held in his possession said claim, etc., and refuses, and has at all times refused, to issue and deliver to plaintiff his warrant for the said claim.

The answer, after denying the essential or material averments of the complaint, pleads three separate and distinct special defenses.

The special defenses raise the principal question in this case and present the theory upon which the defendant refused, and still refuses, to draw his warrant on the treasurer for the amount of the claim. The specific grounds taken

in the several special defenses are not the same, but the three practically involve the same ultimate proposition which follows from the theory upon which the question of the validity of the claim was contested at the trial of the action and is contested upon this appeal, to wit: That Mark Hein, supervisor of said supervisorial district, and as *ex-officio* road commissioner of the road district embracing said supervisorial district, in violation of subdivision 11, section 2643, of the Political Code, as amended by the legislature of 1919 (Stats. 1919, pp. 167, 168), himself undertook to enter into a contract with the plaintiff for the rock and the delivery and "spreading" thereof over and along the roads in said district at a sum in excess of the amount which it is legally competent for a county road commissioner to expend in the absence of a contract duly let and entered into for such a purpose by the board of supervisors.

It is further contended that there is a fatal variance between the claim as presented to and allowed by the board of supervisors and the claim as set out and relied upon in the petition for the writ of mandate. Objection is also made to the claim on the ground that it was not presented to the board in the form required by law. Several other like objections are made, all of which will hereinafter receive such notice as it may be conceived is required in disposing of this appeal.

That the principal question propounded here may, in the consideration and solution thereof, be the more clearly understood, it is orderly to present here the statutory provisions which are particularly pertinent thereto. Subdivision 11 of section 2643 of the Political Code, *supra,* reads as follows:

"Whenever it shall be determined that any grading, graveling, macadamizing, ditching, sprinkling, or other work upon highways is necessary, and is to be done, and where the estimated cost of such work amounts to more than one thousand dollars, the board of supervisors must, by proper order, direct the county surveyor to make definite surveys of the proposed work, and to prepare profiles and cross-sections thereof, and to submit the same with the estimate of the amount or amounts of work to be done, and cost thereof, and with specifications thereof. Said report shall be prepared in duplicate, one copy to be filed in the surveyor's

office, and the other to be filed with the clerk of the board
of supervisors. The board upon receipt of such report must
advertise for bids for the performance of the work specified.
Such advertisement for bids must be published prior to the
day fixed for the opening of bids, for at least once a week
for a period of two weeks in a newspaper of general circula-
tion printed and published in the county."

[1] It is manifest that, under the rule of *expressio unius,*
etc., the above provision does not apply to any work that is
specified therein where the cost thereof is less than or does not
exceed the sum of $1,000. Where the cost of such work is
no more than $1,000 or less than that amount the same is
to be done by the supervisor of each supervisorial district
acting as *ex-officio* road commissioner, under and by. the
authority of section 2645 of the Political Code, without ob-
servance of the formalities required by subdivision 11 of sec-
tion 2643 or without the necessity of requiring any bond for
the faithful performance of the work. In other words,
where the work to be done does not involve a cost exceeding
or which is less than the sum of $1,000 it is not necessary
to let the same by contract, it being within the authority
and indeed the duty of the road commissioners of a county,
under section 2645, to keep their roads within their respec-
tive districts in good and proper repair, and to that end they
are authorized to purchase materials and employ all help and
provide equipment necessary for the proper execution of
their duties in that particular.

Having thus presented the statute law which has direct
application to the ultimate question of fact presented here,
it is proper that we should now state in substance the evi-
dence from which the court manifestly educed its findings of
fact. This evidence may be summarized as follows:

That, on the nineteenth day of April, 1919, the board of
supervisors of Napa County adopted and passed a resolu-
tion instructing the clerk of said board to advertise for
bids for furnishing 2,500 cubic yards of crushed rock at
the "Harris Quarry, in Carneros District," according to
certain specifications; that, in pursuance of the direction so
made, the clerk published a notice in a local newspaper call-
ing for such bids, and stating that the rock was to be
"screened in two sizes, as directed by Supervisor Mark
Hein," one-third of said rock to be ready for delivery "im-

mediately after June 1, 1919, and up to July 1, 1919, and the remaining two-thirds of said rock to be delivered before September 1, 1919.'' The notice further stated that ''Napa County will furnish the rock-crusher and power line leading from the county road to the quarry and transformers,'' the successful bidder or bidders to supply the necessary electric power and quarry equipment. Two several bids or tenders were duly filed in response to said notice, viz.: One by J. H. Hein (a brother of Supervisor Hein), for $1.25 per cubic yard, or an aggregate of $3,125 for the entire contract, and one by Simon Lenz, for $1.10 per cubic yard or for the entire contract a total of $2,750. These bids were opened and considered by the board on the fourteenth day of May, 1919, and, upon motion of Supervisor Hein, the same were rejected.

Supervisor Hein, when testifying, explained the reasons for the rejection of both bids as follows: ''Prior to the opening of the bids, between the time of the advertising and the opening of the bids, we had given a Mr. Errington permission to use the quarry on the Harris ranch, and there was not room in the quarry for two operators; that is one of the reasons, and the other reason was, when I got far enough along, that is, to open the bids, I found I could not comply with the specifications as I had not the funds in district No. 1 to comply with our end of the specifications there.''

It appears that the several different roads in Hein's district were in need of repairing and that, subsequent to the rejection of the bids above spoken of, Hein, in order to put the said roads in proper condition, purchased and ordered from the plaintiff the quantity of crushed rock to be delivered and distributed at certain points on the different roads referred to. Hein testified that the ordering and purchasing of the rock for the roads was made at different times in the months of June and July. In other words, the order for the so-called ''Fly District Road'' was given on June 25, 1919; and for the ''Brown's Valley Road'' June 28th; for a cross-road from Brown's Valley to Carneros, 120 yards, July 3d; for the ''Struve Road,'' 90 yards, July 7th; for the ''Mt. Veeder Road,'' 80 yards, July 9th; for the ''Jensen Road,'' 10 yards, ''Kilburn Street Road,'' 10 yards the ''Steve Henry Road,'' 60 yards, and the ''Old Sonoma

Road," 75 yards, July 11th; for the "Raven Place Road," 60 yards, July 16th; . . . ; for the "Orndorff Street Road," 350 yards (the basis of the claim involved herein), July 26th. Hein testified that each of these orders was given separately and separate delivery of the material made by the plaintiff. He also testified that the full scope of his arrangement with plaintiff was that the latter should furnish and deliver the rock at points on the road designated by him; that Sittig, himself, used his own equipment for transporting the rock from the quarry to the road and hired and paid the men employed by him (plaintiff) to assist in such transportation. On the latter point Hein was corroborated by plaintiff. The said witness testified that the rock for the Orndorff Street road was delivered between the twenty-fifth day of July and the first day of August, 1919.

Said Hein further testified that the work of scarifying the road preparatory to macadamizing it with the rock so furnished and the work of macadamizing or spreading the material over and on those portions of the road which required repairing were done by himself, personally (without expense to the county so far as his own labor was concerned), and one Franco, whom he had employed to assist him.

Franco testified that he worked 16½ days on several roads in road district No. 1, the Orndorff road being one, and for his services for all the work so done he was paid at the rate of $6 per day; that he presented two claims to the board for his services, one of them being for $84, for services performed on the Brown's Valley road. Franco said that he worked on the roads under the immediate direction of Supervisor Hein and that he so worked only as a laborer and had no control of other laborers doing like work.

The plaintiff testified that he procured the crushed rock furnished by him for Supervisor Hein from the latter's brother, J. H. Hein, who was the same J. H. Hein who submitted one of the rejected bids for supplying road district No. 1 with that material. He further stated that he hauled and delivered the rock for use on Orndorff Street at the points on said road designated by Supervisor Hein at some time after the twenty-second day of July (the date on which the statute of 1919 went into effect), and the first day of August, 1919, on which latter date, it should here be

stated, the record shows that the county engineer, previously appointed by the board of supervisors, entered upon the discharge of his duties as such in pursuance of the terms of his appointment and to whom, from said date on, the duties of the supervisors of Napa County as *ex-officio* road commissioners were transferred and committed under the law.

The record of the proceedings of the board of supervisors showing the presentation and the allowance of the claim in dispute, on the twelfth day of November, 1919, was introduced in evidence, as were likewise the certificate of plaintiff to the effect that the claim as presented was correct, the certificate of Mark Hein, as supervisor of district No. 1, certifying to the necessity for the materials and services specified in the claim and that he ordered the same, and that the rock was delivered and the services performed as set forth by claimant in the claim, the warrant, with the indorsement of said Hein approving and ordering the same paid, an unsigned blank certificate of the auditor, and a brief statement by the district attorney to the effect that the claim as presented was illegal.

The auditor testified that, upon the presentation of the claim to him, he filed the same and then presented it to the board of supervisors, after which it was allowed by said board and returned to him by the clerk of the board, indorsed as above indicated. The claim was not itemized, but was for the lump sum of $873.80 for "340 yards of rock crushed and hauled and *spread on* Orndorff Street."

The evidence showed that some eleven other claims than the one for the rock furnished by plaintiff for Orndorff Street were presented at the same time to the board of supervisors for rock furnished by said plaintiff to be used on other roads in the same district. The plaintiff testified that these claims were presented separately because they were for purchases of rock ordered at different times, delivered at different times and used or to be used in the repair of different roads in said district.

From the evidence, of which the foregoing statement embraces a brief digest, the court found, in substance, as follows: That between the twenty-second day of July, 1919, and the thirty-first day of July, 1919, the said Mark Hein, as road commissioner of road district No. 1, Napa County, purchased for said county from the petitioner, for the repair

of the roads and highways in said road district, and the petitioner furnished, sold, and delivered to said county for said purpose of repair, 340 cubic yards of crushed rock, said rock having been delivered within the time above mentioned and which was used for repair on a county road known as "Orndorff Street" for the price of $873.80; that said Hein did not, as such road commissioner, nor otherwise, ever employ or engage petitioner to spread said rock upon said road, and that said petitioner did not spread said rock thereon, and that the said sum of $873.80 was the price of said 340 cubic yards of crushed rock and did not include or comprise any sum whatsoever for any work, labor, or services appertaining to the spreading of said rock upon said road; that said Hein, at other times and on other occasions, also purchased crushed rock from petitioner for the repair of the roads in his supervisorial district other than the Orndorff Street road and the same were delivered at different places and different times and in different quantities along and adjacent to such other roads in said district according as repair of said roads necessitated the same to be so delivered and as might from time to time be determined by said road commissioner, "and that none of the said purchases included the spreading of rock upon said roads or any thereof and each and all of said purchases and deliveries of said crushed rock were independent of each other and each purchase and delivery was complete in and of itself, and each comprised a separate and distinct transaction"; that the board of supervisors did not pursue or act upon the procedure set forth in subdivision 11 of section 2643 of the Political Code in the purchase and delivery of said rock for Orndorff Street, or any other roads for which such rock was purchased by the road commissioner of said district, "but, in each and all of said instances, including said Orndorff Street, said rock was purchased by the said road commissioner for the repair of the roads in said road district as the conditions of said roads necessitating such repairs might from time to time arise or require of him or his successor, in performance of their official duties." The court further found:

"That it is true that eleven other claims against said county of Napa were presented by petitioner to said board of supervisors, but each one of said claims related to transac-

tions independent of, and not embraced within, nor in any manner dependent upon or forming a part of the transaction for the purchase of said rock for said Orndorff Street, upon which these proceedings are based, and that each of said eleven claims so presented were separately considered, acted upon, and allowed by the said board of supervisors and separate warrants were issued by said auditor of said county of Napa for the payment of each thereof, and each and all of said warrants were delivered to said petitioner, by said auditor and paid by the county treasurer of said county, prior to the commencement of these proceedings.''

That the foregoing findings derive sufficient support from the evidence is plainly apparent from the above epitomized statement of the facts. It is readily to be conceded, though, that the record discloses some evidence which tends in a measure to support the theory of the defendant that the manner in which the several orders for crushed rock were made by Supervisor Hein was adopted by that officer for no other reason than to enable him to evade the law requiring the board of supervisors to let all contracts for certain specified work on the roads of the county involving an expenditure of more than $1,000 only after proposals for doing such work have been duly advertised for and accepted; but this is only to say that there exists in the evidence addressed to that vital question a conflict which must be required to abide where its determination by the trial court has left it. It must, therefore, be accepted as settled propositions of fact in this case that the purchase of the crushed rock for the Orndorff Street road by the road commissioner of road district No. 1 and upon which the claim in controversy arose and is founded constituted a transaction separate from, independent of and in no way connected with any other transaction occurring about the same time and affecting said district, and that the amount of the cost incident to said purchase being less than the sum of $1,000 in the purchase of said rock or the delivery thereof for said Orndorff Street, the board of supervisors of Napa County did not ''follow, pursue, or act upon the procedure set forth in subdivision 11 of section 2643 of the Political Code.'' And from these facts it follows as a matter of law, as the court below adjudged, that the claim was and

is a legal one against the county of Napa and upon the fund of road district No. 1.

[2] If the foregoing considerations embraced all that there was to this appeal, it is manifest that they would alone be decisive of this appeal, but, as seen, the counsel for the appellant presents and presses upon us certain objections to the validity of the claim founded on an alleged failure of the claimant and the board of supervisors to follow the form prescribed for the presentation and allowance of claims against the treasury of a county. It is further urged, as we have already stated, that there is a fatal variance between the claim as presented to and allowed by the board of supervisors and the claim as pleaded under an amendment of the complaint allowed by the court in the course of the trial on the application of counsel for the plaintiff. These objections we will now consider, and the last stated will first receive attention.

The claim as presented to and allowed by the board, as will be noted, was for "340 yards rock crushed and hauled and *spread* on Orndorff Street." The effect of the amendment of the complaint was merely to strike therefrom the words "and spread" as they appeared in said complaint in its original draft and which, following the exact phraseology of the claim in suit, were used as descriptive of said claim. Thus, so it is argued, a variance arose between the claim as presented to and allowed by the board and the claim as pleaded.

The objection is extremely technical and, if upon its face it does not appear to be without merit, the testimony of both Sittig and Supervisor Hein does show such to be the case. These witnesses testified that the arrangement between them for the supplying of the rock was that it should be delivered to the Orndorff Street road and dumped at such places on or along said road as the supervisor should designate. Sittig said that when any of his trucks reached the road with a load of rock the bed of the truck would be opened so that, as the truck continued in motion, the rock would be dumped or scattered on and over the road. This process was frequently referred to by the plaintiff while testifying as the act of "spreading" the rock on the road, but he explained that in thus describing the delivery of the rock he meant dumping or scattering it, as above indicated.

Supervisor Hein also testified that it was not the understanding that plaintiff should do more than deliver the macadam as above described or that the latter should spread the rock on and over the road as in repair thereof.

Thus it appears quite clear that both plaintiff and said Hein, as *ex-officio* road commissioner, so understood the signification of the word "spread" as it was used in the claim as presented and allowed. And, since such was the understanding of said Hein, a member of the board, it may be assumed that the board itself, in considering and passing upon the claim, had a like understanding of it and was, therefore, not misled by the improper use of the word "spread" therein.

[3] What is said above applies with equal force to the objection that the court found that the county was indebted to plaintiff on a liability different from that for which he presented his claim to the board of supervisors. The alleged "different liability" found by the court arises out of the amendment of the complaint above referred to, the finding as to the liability following the proof addressed to the nature of the claim as it was described by the complaint as amended.

The objections to the form in which the claim was prepared, presented to, and allowed by the board of supervisors are these: First, that the said claim was not presented and the payment thereof ordered in the form or according to the procedure adopted by the board of supervisors of the county of Napa, with the approval of the state board of control, in pursuance of section 4076 of the Political Code, in that the claimant, in the place of attaching to the claim an affidavit stating that the claim and items as therein set out are true and correct and that no part thereof has been paid, merely annexed his certificate thereto, certifying to the correctness of the claim; second, that there was not annexed to the claim a certificate either by the county clerk or the county auditor, "as to the correctness of the computations" of the itemized statement of the claim, as required by subdivision 3 of said section 4076.

It is true, as the record shows, that the claim in dispute was not supported by the affidavit of the plaintiff, nor was there annexed thereto the certificate of the clerk of the board or the auditor which is required by the third subdivision of

section 4076. Of course, it cannot be doubted for a moment that these omissions constituted irregularities in the matter of the presentation to and the allowance of the claim by the board of supervisors. We are of the opinion, however, that these irregularities, since they merely go to the form or the procedure by which the claim was presented and allowed, were cured by the action of the board in allowing the claim. In other words, inasmuch as it is, under the law as we have pointed it out above, within the general powers of the members of the board of supervisors as such, acting in their *ex-officio* capacities as road commissioners, to order materials for and cause work to be done in the repairing of the roads within their respective road districts, where the cost thereof in no case exceeds the sum of $1,000 or is less than that amount, the allowance of a claim therefor by the board of supervisors, although said claim be irregular in form, amounted to a recognition of the correctness of the claim and therefore a ratification of the act of the road commissioner resulting in the creation of the liability upon which the claim is founded. As is said in the case of *Power* v. *May,* 114 Cal. 207, [46 Pac. 6], quoting from the syllabi: ''The board of supervisors may, under certain circumstances, allow a claim against the county, although the formalities necessary to bind it were not originally employed. Thus in respect to a matter concerning which the board had original power, it may, provided the service has been rendered, or the money expended for the benefit of the county in a manner authorized by law, cure informalities or irregularities in procedure by a subsequent ratification and recognition of its liability.''

The doctrine of recognition by ratification of a liability against a county, arising upon an agreement or an understanding which it is within the general powers of the county to make for the benefit of the county, is considered and approved by a large array of authorities, many of which may be found cited in the footnotes of 15 Corpus Juris, page 554, section 250. The rule is stated in the text as follows: ''Not only may the unauthorized contracts of a county be given validity by curative statutes, but contracts made on behalf of the county, and within the general powers of the county to make, but made in an irregular manner or by agents without the requisite authority, may be ratified by

53 Cal. App.—

such county through the agents who would have been authorized in the first place to make such contract, and this ratification may be either express or implied, provided some official action by the proper authorities is taken in reference to the particular matter in question. The ratification must be made by the proper authorities in the same capacity in which they were required to act in making the contract in the first instance, and with full knowledge of the existence and nature of the contract in question. The unauthorized agent who made the contract cannot ratify it. It is also essential that the contract be of such a nature that the body assuming to ratify it would have had the power to make it in the first instance. A contract wholly unauthorized and void cannot be ratified.'' (See, also, *San Francisco Gas Light Co.* v. *Dunn*, 62 Cal. 580 et seq.; *Irwin* v. *County of Yuba*, 119 Cal. 686, 690, [52 Pac. 35]; *Smeltzer* v. *Miller*, 125 Cal. 41, [57 Pac. 668]; *Power* v. *May*, 123 Cal. 147, [55 Pac. 796]; *Buck* v. *City of Eureka*, 124 Cal. 61, [56 Pac. 612]; *Spence* v. *Clay County*, 122 Ark. 157, [182 S. W. 573]; *Appel* v. *State*, 9 Wyo. 187, [61 Pac. 1015].)

It may further be added that, as to the proposition that the claim, as presented to the board, was fatally defective in that there was not annexed thereto a certificate of the auditor authenticating the ''correctness of the computations'' of the claim, another reply thereto is that the claim was put in for a lump sum for the total amount of the rock furnished and delivered by the plaintiff, without stating in itemized form the number of cubic yards of rock so furnished and delivered, and there was, therefore, no ''computation'' to be made by the auditor as to said claim. We are, of course, not to be understood as holding that the claim as presented and allowed was in due legal form. To the contrary, it is obvious that it was not; for clearly the proper way to have prepared and presented it was to state therein the number of cubic yards supplied and delivered for use on Orndorff Street. What we do say, though, is that the failure to present the claim in that form amounted only to an informality or irregularity, or, in other words, did not involve the omission to observe a jurisdictional prerequisite to the due consideration of the claim by the board.

The cases cited by defendant as supporting his position that the mode prescribed by the statute for the presentation

of claims against a county must, to legally authorize the board of supervisors to allow such claims, be strictly followed, are not in point here. No useful purpose would be subserved by a review herein of all the cases so cited. It is enough to say, in referring to the doctrine of those cases, that it has never been questioned that, as to certain matters coming within the legal cognizance of the governing board and other officers of a county, the mode prescribed by the statute is the measure of the power of such officers, and that in such cases "the method of initiating the proceeding must be followed in order to make a valid exercise of the power there conferred." (*Larsen* v. *City and County of San Francisco,* 182 Cal. 1, [186 Pac. 757].) But we think it will be found to be generally true that in those instances where the mode prescribed for the doing of certain official acts is the measure of the power for doing them the acts so required to be done are essentially jurisdictional—that is, they constitute jurisdictional prerequisites to a valid exercise of the power conferred and sought to be exercised. For instance, let us take the case of *Reams* v. *Cooley,* 171 Cal. 150, [Ann. Cas. 1917A, 1260, 152 Pac. 293], one among the more recently decided cases cited by defendant. In that case a writ of mandate was sought to compel the superintendent of schools of Imperial County to approve and allow a warrant in the sum of $531 drawn in favor of the appellant by the board of trustees of the Central Union High School District of Imperial County. The claim upon which the warrant was allowed by said board of trustees was for doing certain plastering work on the school building in said school district, the same not having been done according to the method prescribed by subdivision 22 of section 1617 of the Political Code as that section and subdivision read prior to the amendment thereof by the legislature of 1913. The said subdivision of said section provided that before making any contract for the expenditure of more than $200 it was necessary for the board of trustees of a school district "to publish a notice calling for bids, stating the work to be done or materials or supplies to be furnished, and the time when and place where bids will be opened, at least once a week for two weeks in some daily or weekly newspaper published in the county," etc. This course was not pursued. It was held that the claim was illegal and a writ of mandate

was refused. The court said: "Where the statute prescribes the only mode by which the power to contract shall be exercised the *mode* is the *measure* of the power. A contract made otherwise than as so prescribed is not binding or obligatory as a contract and the doctrine of implied liability has no application in such cases," citing a number of cases.

The distinction between that case (*Reams* v. *Cooley*) and the instant case is obvious. In the former, there were certain steps required to be taken before the board of trustees could legally authorize the work to be done. In the present case, it was, under the law, within the discretion of the road commissioner and his duty to keep the roads in his district in repair and, without resorting to any formalities for that purpose, purchase such materials and employ such labor as might be necessary to enable him to discharge that duty. When he has done this and the cost has not exceeded the sum of $1,000, a legal liability thereupon has arisen against the county for the materials and labor so furnished.

Manifestly no such liability could arise under subdivision 11 of section 2643, unless the terms upon which such liability may be created as prescribed by said subdivision are followed with substantial strictness; and this is precisely the situation that is presented in the case of *Reams* v. *Cooley*. The procedure prescribed for the presentation to and consideration by the board of supervisors of a claim based upon a liability created under section 2645 of the Political Code, vesting supervisors, as road commissioners, with the power, discretion, and duty of keeping the roads in their respective districts in good repair, is, as we have before declared, merely formal and in no sense jurisdictional.

The judgment is affirmed.

Finch, P. J., and Burnett, J., concurred.