[Civ. No. 1256.   Fourth Appellate District.—April 19, 1934.]

C. D. BROWN, Appellant, v. ELSIE I. BOZEMAN, as Superintendent of Schools, etc., et al., Respondents.

Sidney J. W. Sharp, Roger R. Walch and M. Wingrove for Appellant.

Clarence H. Wilson, District Attorney, for Respondents.

Carl B. Sturzenacker, Hal Hughes, Guerin & Guerin, James W. Campbell and Clifford D. Good, as *Amici Curiae* on Behalf of Appellant.

MARKS, J.—Appellant brought an action against Elsie I. Bozeman as Superintendent of Schools of Kings County, and D. Bunn Rea as Auditor of that county, upon four assigned claims against the Reefe School District, seeking to compel them to audit and order paid the warrants issued by the board of trustees of the district for labor performed and materials furnished. Judgment went for respondents and this appeal followed.

The Reefe School District is an elementary rural school district situated in Kings County. It had scheduled the commencement exercises of its graduating class to take place

on May 27, 1932. There was no school or assembly room on the school premises, nor in the district, large enough to accommodate the guests who desired to be present at these exercises. Members of the board of trustees discussed various plans for accommodating the audience. There was a baseball field on the school grounds upon which indoor baseball was played. No seats had been provided for spectators. The trustees decided to build movable bleachers to be made in sections. They placed the sections so that they formed three sides of a quadrangle, the fourth being the entrance to the school building. The commencement exercises were held before the audience seated on the bleachers. These bleachers were later moved onto the baseball grounds.

About the time of the completion of the bleachers the trustees decided to improve an old handball court on the school grounds. This they did by reconstructing the floor and walls with cement. During this construction, and upon the suggestion and request of the school janitor, the cement was extended up to one of the entrances of the schoolhouse through which the pupils passed when assembling for daily instruction. This enabled them to form in line on the concrete instead of on the ground as they had previously done. It prevented their tracking dirt, and mud during wet weather, into the schoolhouse.

The trustees then decided to erect new posts and new backstops for the basketball courts. When this work was in progress, or about completed, they considered building one or two tennis courts. Figures were submitted by their building superintendent showing that two tennis courts could be constructed at a cost proportionately less than one court. During the course of construction of these courts they extended this improvement to the construction of four courts. They then decided to beautify the grounds with shrubs and plants. This necessitated the installation of water piping. The school grounds were not level, and at some time during the latter part of these different improvements they decided to have the grounds leveled. The ball grounds were unlighted, and after they were completed, the trustees decided to install floodlights. This was extended to the placing of floodlights in the various other courts which had been built or reconstructed. The total cost of all these improvements was $8,714.13. The trustees

did not advertise for bids for any of the labor or materials used in the making of improvements.

The trustees audited and allowed the demands for the various items of expenditure, but the respondents refused to order them paid for the reason, as they maintained, that the expenditures were illegally made in violation of sections 6.30 to 6.36, inclusive, of the School Code. The trial court upheld their contention and refused a writ of mandate.

The judgment of the trial court is based upon the following findings of fact:

"That the warrant issued to R. McQuaid in the amount of $8.00 on which said first cause of action is based, together with the warrant in the amount of $32.75 issued to J. Pitchford on which said second cause of action is based, and together with the warrant in the amount of $36.74 issued to The Republic Supply Company of California, a corporation, on which the third cause of action set forth in said petition is based, and the warrant in the amount of $496.85 issued to the Brown Materials Co., a corporation, on which the fourth cause of action set forth in said petition is based, were all issued in payment of labor and materials contracted for by said Reefe School District as part of a general scheme and plan of the Board of Trustees of said district to construct on the school grounds of said district situated in the town of Avenal, Kings County, California, four lighted concrete tennis courts, two concrete handball courts, one lighted indoor baseball diamond, one basketball court, wooden bleachers for said baseball diamond, and to plant shrubbery around the school building on said school grounds, and to install a pipe irrigation system to irrigate said shrubbery.

"That at the time of commencing said work said Board of Trustees of said school district knew that said work would cost far in excess of $500.00 and that it was estimated at the time of the commencement of said work that the cost of said work would be about $6,500.00. That upon completion said work has cost said school district in excess of $8,714.13, and that the Board of Trustees of said school district has duly and regularly issued warrants amounting to the total sum of $8,714.13 in payment of labor and materials used in the construction of said work. That a

detailed list of said warrants giving the number of each warrant, the name of the payee, the date of the issuance of each warrant, the amount of each warrant and what said warrant was issued for is hereto annexed and marked 'Exhibit A'.

"That said Board of Trustees of said district did not let any contract for the performance of said work or any part thereof and did not advertise for bids for the performance of said work or any part thereof, as required by Sections 6.30 and 6.31 of the School Code of the State of California. That the Board of Trustees of said district employed a foreman to supervise said work and that said Board employed numerous laborers by the day to perform said work under the supervision of said foreman and bought the materials used in the construction of said work from different supply houses. That no part of said work was done by contract but that all of said work was done by day labor under the direct supervision and control of the foreman employed by said Board of Trustees."

Appellant attacks these findings as not being supported by the evidence, and contrary to all of the evidence. He bases his contention upon the argument that each improvement made was a separate and distinct undertaking and not related to any of the others; that each improvement cost less than $500 and therefore the trustees of the district were not required to advertise for bids and the contracts were legal obligations of the district. The decision of this question is determinative of this appeal.

The undisputed evidence in this case shows conclusively that when the work on the bleachers was started the trustees had no idea of undertaking any other improvement on the school grounds; that each improvement suggested itself separately to the members of the board and was separately undertaken, either at the close of construction or during the progress of construction of the prior improvement; that when each improvement was considered it was discussed at an informal meeting of the board members and estimates of costs were obtained by the building superintendent; that each job was separate and distinct from the others; that the materials were separately ordered and that at no time did any of the members of the board of trustees have any general scheme or plan to construct all of the improve-

ments; that the separate improvements came to the minds of the board members over a period of time and that each one was decided upon separately and independent of the others. There being no contrary evidence in the record, it seems clear that those portions of the findings which we have quoted, conflicting with this evidence, are not supported by any evidence and are contrary to all of the evidence in the record.

It was stipulated at the trial that the labor was performed and materials furnished, at fair and equitable prices; that the materials were of good quality, suitable for the purposes for which they were used, were actually used by the district in the improvements; that the members of the board of trustees, the laborers, and the materialmen all acted in good faith and were innocent of any fraudulent or wrongful intent; that the improvements constructed on the school grounds resulted in benefit to the school district and are being used for the advantage of the district; that the demands were properly filed and allowed by the board of trustees and warrants issued.

The sections of the School Code which we must consider are as follows:

"6.30. Boards of school trustees and city boards of education shall have power, and it shall be their duty, to let all contracts involving an expenditure of more than five hundred dollars for work to be done or for materials or supplies to be furnished to the lowest responsible bidder who shall give such security as the board may require, or else reject all bids."

"6.34. The board may repair old buildings and improve school grounds by day's labor."

"6.36. In each school district governed by a city board of education, the governing board may make repairs, alterations or additions to school buildings, repair or build apparatus or equipment, make improvements on the school grounds and erect new buildings by day's labor, whenever the total cost of labor on the job does not exceed one thousand dollars.

"In any school district not governed by a city board of education, the governing board may perform similar work as elsewhere herein provided, whenever the total cost of the job does not exceed five hundred dollars."

Section 3 of the School Code furnishes a rule of construction to be used in interpreting the provisions of that code. It provides: "The Code establishes the law of this state respecting the subjects to which it relates, and its provisions and all proceedings under it are to be liberally construed, with a view to effect its objects and to promote justice."

Appellant stresses that in section 6.30 of the School Code the disjunctive conjunction "or" is used between the clauses concerning the doing of more than $500 worth of work, and the using of $500 worth of materials or supplies. He urges that this means that a project involving $500 worth of labor, and $500 worth of materials or supplies, may be undertaken by the school board without its being required to advertise for bids. If the section stood alone there might be some merit in this contention. The sections of the School Code bearing on the same subject must be read and construed together. The last paragraph of section 6.36 gives the board the right to have work done without advertising for bids "whenever the total cost of the job does not exceed five hundred dollars". We conclude that the fair construction to be put upon these sections must be that set forth in the unequivocal language of the sentence just quoted, and that where the total cost of the labor and materials used in a particular "job" exceeds in value the sum of $500, the board must advertise for bids. (*Reams* v. *Cooley*, 171 Cal. 150 [152 Pac. 293, Ann. Cas. 1917A, 1260]; *Gamewell Fire Alarm Tel. Co.* v. *Los Angeles*, 45 Cal. App. 149 [187 Pac. 163]; *Strauch* v. *San Mateo Junior College Dist.*, 104 Cal. App. 462 [286 Pac. 173].) In *Reams* v. *Cooley, supra,* it was said: "Undoubtedly, a school board, like a municipal corporation, may, under some circumstances, be held liable upon an implied contract for benefits received by it, but this rule of implied liability is applied only in those cases where the board or municipality is given the general power to contract with reference to a subject matter and the express contract which it has assumed to enter in pursuance of this general power is rendered invalid for some mere irregularity or some invalidity in the execution thereof; where the form or manner of entering into a contract is not violative of

any statutory restriction upon the general power of the governing body to contract nor violative of public policy. In the absence of such restriction on the mode or manner of contracting the same general rule applies to such inferior political bodies as to individuals and the former will be held responsible on an implied contract for the payment of benefits it receives under an illegal express contract not prohibited by law. This is the effect of the cases cited by appellant and relied on by him, notably *Higgins* v. *San Diego Water Co.*, 118 Cal. 524 [45 Pac. 824, 50 Pac. 670], *Sacramento* v. *Southern Pac. Co.*, 127 Cal. 217 [59 Pac. 568, 825], and *Contra Costa Water Co.* v. *Breed*, 139 Cal. 432 [73 Pac. 189]. But while the doctrine of implied liability applies where general power to contract on a subject exists and the form or manner of doing so is not expressly provided by charter or statute, the decided weight of authority is to the effect that when by statute the power of the board or municipality to make a contract is limited to a certain prescribed method of doing so and any other method of doing it is expressly or impliedly prohibited, no implied liability can arise for benefits received under a contract made in violation of the particularly prescribed statutory mode. Under such circumstances the express contract attempted to be made is not invalid merely by reason of some irregularity or some invalidity in the exercise of a general power to contract, but the contract is void because the statute prescribes the only method in which a valid contract can be made, and the adoption of the prescribed mode is a jurisdictional prerequisite to the exercise of the power to contract at all and can be exercised in no other manner so as to incur any liability on the part of the municipality. Where the statute prescribes the only mode by which the power to contract shall be exercised the *mode* is the *measure* of the power. A contract made otherwise than as so prescribed is not binding or obligatory as a contract and the doctrine of implied liability has no application in such cases.''

Appellant relies upon the cases of *Perry* v. *City of Los Angeles*, 157 Cal. 146 [106 Pac. 410], *Sittig* v. *Raney*, 53 Cal. App. 709 [200 Pac. 824], and *Warren Brothers Co.* v. *Boyle*, 42 Cal. App. 246 [183 Pac. 706], as supporting his

theory of the case and justifying a reversal of the judgment.

*Perry* v. *City of Los Angeles, supra,* involved an interpretation of the city charter of Los Angeles. This charter contained no provisions identical with the sections of the School Code which we have quoted. The decision was based on the right of the city to make the improvement involved and the absence of express statutory prohibition against the manner of making the contract. The Perry case is not authority here under the reasoning appearing in the above quotation from *Reams* v. *Cooley, supra.* In *Sittig* v. *Raney, supra,* the court held that it was not necessary to advertise for bids where there were twelve separate contracts for road materials delivered on twelve separate roads, each contract being independent of the other and no one being for an amount which would require advertisement for bids under the provisions of subdivision 11 of section 2643 of the Political Code as then in effect. If the decision in *Warren Brothers Co.* v. *Boyle, supra,* conflicts with the decisions in *Reams* v. *Cooley, supra, Gamewell Fire Alarm Tel. Co.* v. *Los Angeles, supra,* and *Strauch* v. *San Mateo Junior College District, supra,* we feel impelled to follow what we consider the better rule announced in these cases.

Funk and Wagnalls Practical Standard Dictionary defines "job" as "a piece of work done, or to be done, as a whole". We think this definition expressive of the sense in which the word is used in section 6.36 of the School Code. With this in mind we are satisfied that the evidence shows the following separate "jobs" undertaken by the school district: (1) Building the bleachers; (2) repairing the handball courts; (3) constructing the cement walkway to the entrance of the schoolhouse; (4) repairing the basketball courts; (5) planting the shrubs and installing water-pipes. Each was complete in itself and in no manner dependent upon any other.

It is also evident that one or more "jobs" were included in building the tennis courts and one or more "jobs" in the installation of the lighting system or systems. We cannot determine from the evidence whether each of these undertakings included one, or more than one "job", nor can we determine the cost of any of them.

The same is true of the grading. It may be that part of this work was done in connection with the building of the tennis courts and should be charged there. The balance of the grading might have been a separate "job", or separate "jobs", or the grading might have been one "job". This cannot be determined from the evidence in the record.

We cannot determine from the evidence on what particular "job" or "jobs" the labor and materials involved in this action were used. If they were used on a "job" or "jobs" costing less than $500 the district should pay for them. If they were used on a "job" or "jobs" costing more than $500 the district cannot pay the bills because of the board having failed to advertise for bids. These matters must be left for determination at a future trial.

The evidence is clear that the bleachers cost $490 complete, and that the "jobs" which we have already numbered 2, 3, 4 and 5 each cost less than $500. It was not necessary to advertise for bids on any of them and there is no good reason why the bills for labor and materials furnished on these "jobs" should not be paid.

It is probable that much of the difference between the materialmen and the respondents was caused by the manner in which bills were rendered and the demands made out. This may be illustrated by the demand made for materials used in the construction of the bleachers. The materialman submitted a bill for $461.20. Of this sum $380 was for materials used in the bleachers and the balance, $81.20, was for materials used in the manual training department of the school and other general school activities. It should be possible to segregate the items of the various accounts so that the cost of each "job" could be shown. If this be done the trial court should order respondent Bozeman to approve such portions of the warrants involved in this action as are shown to have been for labor or materials used on any of the "jobs" not costing in excess of $500, and the respondent Rea to approve, allow, sign and order the same paid. Further, there is no good reason why any portion of any bill of a materialman which may be shown to have been for materials used in general school work, such as the bill for $81.20 for the manual training department and other school supplies

which we have just mentioned, should not be paid if it be shown that such bill was legally contracted.

Judgment reversed.

Barnard, P. J., and Jennings, J., concurred.