KUNKLE WATER & ELECTRIC, INC., Appellant,

v.

CITY OF PRESCOTT, Iowa, Appellee.

No. 68988.

Supreme Court of Iowa.

April 11, 1984.

R.E. Feilmeyer of Taylor, Taylor, Feilmeyer, Miller & Dinkla, Guthrie Center, for appellant.

Dennis W. Johnson of Belin, Harris, Helmick & Heartney, Des Moines, for appellee.

Considered by REYNOLDSON, C.J., and UHLENHOPP, HARRIS, LARSON, and CARTER, JJ.

REYNOLDSON, Chief Justice.

Plaintiff corporation sued defendant city to collect a $67,038.18 account, including interest, for labor and equipment furnished in repairing the city's water system. The city defended on the grounds of fraud and violation of the competitive bidding statute, Iowa Code section 384.96.[1] An Adams County jury found for the defendant. Judgment entered on this verdict was appealed and affirmed by the court of appeals. We granted further review and now affirm.

Richard Kunkle (Kunkle) is the principal stockholder, president and operating officer of the plaintiff corporation, and for convenience we cast him in the role of plaintiff. Defendant city of Prescott will be referred to as "the city."

The evidence disclosed that in 1978 the city's water was very rusty, presenting the appearance of tea. Residents were complaining to mayor James Gray and to the city council members, all of whom, with the exception of one council member, were new on the job. Neither they nor Myron Shires, a newly hired, inexperienced, water treatment operator, had the knowledge or experience to take or recommend corrective measures.

---

**1.** At all times relevant to this case Iowa Code section 384.96 provided:

When the estimated total cost of a public improvement exceeds the sum of ten thousand dollars, the governing body shall advertise for sealed bids for the proposed improvement by publishing a notice to bidders as provided in section 362.3.

The statutory limitation was raised to $25,000 by 1980 Iowa Acts ch. 1127, § 1.

In April 1979 the city called in Kunkle, who had done prior work for the municipality, to "advise [it] of what [it] needed to do to correct the problem." Kunkle testified he had grown up "in the plumbing business" and had spent 32 years in the water treatment field. The city's evidence disclosed it relied on Kunkle's expertise and representations; the latter inspected the water plant, presented his proposed remedial measures, and estimated a total cost of $3500. A short time later Kunkle produced a contract dated April 25, 1979, which the mayor signed "on the hood of the fire truck." This contract called for replacement of the anthrafilt used to filter the water; installation of a backwash meter; and repair work on the manholes, water tower controls, meter bypass, gate valve and chemical tank. Each item listed had a price attached, for a total of $3240. The contract further provided, however, that "Payment for labor to install the above materials under this agreement shall be made to KUNKLE WATER & ELECTRIC on or before the 10th of the month, for all work done or completed the previous month at the rate of $34.00 per hour, for two men, machinery, tools and equipment ...." This was the only written contract between the parties.

Kunkle testified his recommendations and estimates were tailored carefully to the city's own analysis of its water problem. He was aware that the city was considering an enlargement of the plant and testified that "if the customer is having problems, we list all the systems and if they point out things that are bad, we go into those and do whatever they want to be done."

After Kunkle's employees started the repair work, they reported new problems almost daily. The city orally approved this additional work, the mayor testifying that

it seemed like as the work progressed we seemed to run into one problem right after another that kept cropping up and we didn't—it seemed like we had to fix— we would come to get one thing fixed and it didn't cure the problem, so we

would have to fix another and just keep leading—one thing just led to another. So we were—we were kind of into the thing at that time and didn't have much choice but to go ahead with the repair.

Unfortunately, when the work was completed, the water was still rusty. The city ultimately built a new water system in which it used none of the repaired equipment, despite Kunkle's previous assurances that it would be able to do so. The city thus derived no benefit from Kunkle's work although Mayor Gray testified he was "satisfied with the work that was done."

While Kunkle's employees were working in Prescott, the city received monthly invoices for parts and labor; some of these were substantially in excess of the $10,000 competitive bidding threshold. Those bills were designated simply "City of Prescott"; no attempt was made to break them down into separate repair projects. Similarly, plaintiff's employees made no attempt to charge their time to separate and distinct jobs. However, in pleadings and during trial, Kunkle insisted that he had really worked on ten separate projects for Prescott. These were broken down as follows:

| | |
|---|---|
| Controls | $5,807.66 |
| Well line | 9,689.26 |
| Filter material | 9,776.80 |
| Aerator & detention tank | 5,938.02 |
| Pitless unit | 6,952.66 |
| Well leak and dirt work | 3,359.50 |
| Well | 2,845.40 |
| Booster pump | 5,489.01 |
| Chemical feed system | 3,714.02 |
| Meter materials | 423.26 |

Each of these projects was, of course, under the $10,000 competitive bidding threshold. Kunkle admitted, however, that many of the projects were handled simultaneously and that all parts of a water system work together to produce potable water. He also conceded the ten-project breakdown of his total invoice was prepared by his attorney in anticipation of the present litigation.

Kunkle was not surprised by the city's failure to pay his bill; he had been informed at the outset that the city had no

money and hoped to secure outside financing. However, when the Prescott council finally decided to work out a payment plan for Kunkle in the fall of 1979, it was advised by the city attorney of the competitive bidding statute. The mayor testified that neither he nor any of the council members was previously aware of the bidding requirement.

During trial the city sought to introduce evidence of Kunkle's transactions with other municipalities in order to show his awareness of the statute and his custom of circumventing it by dividing his work into small component parts. Trial court previously had sustained a motion in limine prohibiting use of this information, stating:

> the facts and details of the other transactions ... could not be brought to the attention of the jury in their entirety and for that reason would present no evidence of a course of conduct sufficient to establish any fraud.

However, when on cross-examination at trial Kunkle was asked if he "had done work for a number of cities where [he was] paid more than $10,000 without going through the competitive bidding process," trial court overruled his counsel's objection. Kunkle then testified he had been paid $30,000 by the city of Truro and there had broken his bill down into segments of less than $10,000 in order to get paid. Trial court noted the motion in limine went to the presentation of collateral evidence and not to the cross-examination of Kunkle in order to show his knowledge and course of conduct. The court permitted cross-examination relating to these transactions with other cities.

Defense counsel was permitted to show that Kunkle's billings had exceeded the competitive bidding statute in 32 instances involving other Iowa cities, most of them small municipalities. In some cases he had broken down the total bills so that he "could get paid." Similar testimony was elicited later through the deposition of Robert Szczesny, a former Kunkle employee, who testified, without objection, that this "was happening" while he worked for Kun-

kle. Szczesny further testified this practice was used primarily in cities with a population of 8,000 or less. He opined that the probable competitive bidding price for the Prescott project would have been $23,-965.52, a figure some $30,000 less than the amount actually billed by Kunkle. Szczesny's figure included a standard 20 percent profit margin and was, in his opinion, the "fair and reasonable value of [the] work performed."

Upon appeal Kunkle raises the following issues: (1) Did trial court err in permitting testimony relating to his transactions with other cities? (2) Was there substantial evidence to justify trial court's submission of the issue of fraud to the jury? (3) Did trial court err in instructing the jury that the city could avoid its contractual liability if Kunkle was guilty of fraud in the inducement, when the city had not rescinded the contract and offered to restore what it had received thereunder? (4) Did trial court err in failing to instruct on the inapplicability of the competitive bidding statute when work is estimated at a cost below $10,000? (5) Did trial court err in instructing the jury that no quantum meruit recovery is possible when the competitive bidding statute is violated? We consider these issues in the divisions that follow.

### I. *Evidence of Other Transactions.*

Confronting Kunkle on cross-examination, defense counsel sought to question him concerning a list of 32 instances in which municipalities in the last five years had paid him more than $10,000 without competitive bidding. This list had been furnished by Kunkle in response to discovery. Kunkle's counsel objected that the circumstances surrounding each project were not revealed; that the questions related to collateral matters and were beyond the scope of direct examination. Trial court overruled these objections on the ground the questions went "to the witness' knowledge and to his course of conduct." The city's counsel then secured Kunkle's concessions that in none of these cases was a statutory bidding procedure followed; in

no case was his estimate above the statutory bidding requirement; and in some cases he had broken down the invoices into separate projects so he "could get paid."

Kunkle asserts trial court's evidentiary ruling was an abuse of discretion and erroneous.

■ The admission of testimony regarding similar acts is "a question of trial court discretion," and we reverse only if that discretion is abused. *Team Central, Inc. v. Teamco*, 271 N.W.2d 914, 921 (Iowa 1978). It is "basically a question of practicality involving the inconvenience of trying collateral issues. The determination of the relevancy and similarity of other acts is for the trial court." *Northrup v. Miles Homes, Inc.*, 204 N.W.2d 850, 856 (Iowa 1973) (citation omitted). "[A]ny fact tending to bear upon a fact in issue is susceptible of proof, and thus collateral facts may be proved where they can be shown to fall within that category," *Davis v. L & W Construction Co.*, 176 N.W.2d 223, 226 (Iowa 1970).

■ We think evidence that Kunkle in 32 other instances over a five-year period had estimated below the statutory limitation on projects that later overran the $10,000 trigger for competitive bidding, and had in a number of those instances divided his billing to disguise that fact, tended to establish an overall pattern lending support to the city's contentions of fraud and deliberate evasion of the statute. We hold trial court did not abuse its discretion in admitting the challenged testimony.

II. *Submission of Fraud Issue.*

Kunkle asserts there was insufficient evidence to justify trial court's submission of the fraud issue to the jury. Viewing the evidence in the light most favorable to the city, *Poulsen v. Russell*, 300 N.W.2d 289, 294, 296 (Iowa 1981), we disagree.

The record discloses substantial evidence from which the jury could have found Kunkle was contacted to fix the city's water system. The city officers and personnel were inexperienced and relied on Kunkle's

expertise and superior knowledge. The latter, hoping to induce the city to contract immediately, estimated repair costs at $3500. Although he knew the water system was old and had been maintained badly, Kunkle did not caution the city this initial work might not resolve the problem. Instead, he revealed asserted defects piecemeal, leading the city step by step into further commitments involving labor and materials for which he grossly overcharged.

■ In *Hagarty v. Dysart-Geneseo Community School District*, 282 N.W.2d 92, 95 (Iowa 1979), we reviewed the elements a plaintiff must prove by a preponderance of clear, satisfactory and convincing evidence in order to establish fraud: (1) representation, (2) falsity, (3) materiality, (4) scienter, (5) intent to deceive, (6) reliance, and (7) resulting injury and damage. *See also Omaha Bank for Cooperatives v. Siouxland Cattle Cooperative*, 305 N.W.2d 458, 464 (Iowa 1981). These elements are seldom susceptible to direct proof and may be proven by circumstantial evidence. *See Northrup v. Miles Homes, Inc.*, 204 N.W.2d at 859; *Haack v. Burlington Northern, Inc.*, 309 N.W.2d 147, 150 (Iowa Ct.App.1981).

■ A misrepresentation may occur when one with superior knowledge, dealing with inexperienced persons who rely on him or her, purposely suppresses the truth respecting a material fact involved in the transaction. *See Hall v. Wright*, 261 Iowa 758, 772, 156 N.W.2d 661, 669 (1968) ("The actual deceit practiced by defendant was in leading plaintiff to believe that all aspects of the transaction were in order .... This at a time when he had no idea what the actual state ... was, was nothing but deceit."); *Ford v. Barcus*, 261 Iowa 616, 623, 155 N.W.2d 507, 511 (1968) ("Fraud ... may be committed by a suppression of the truth as well as by suggestion of falsehood."); *Smith v. Peterson*, 282 N.W.2d 761, 765–66 (Iowa Ct.App.1979) (failure to disclose pendency of condemnation proceeding that would limit access to property being sold).

The jury justifiably could have found Kunkle's failure to warn the city that additional work might be needed supplied both the representation and falsity elements of fraud. Injury and damage could have been found from Szczesny's expert testimony that lack of competitive bidding resulted in a $30,000 overcharge. Similarly, "intent, being a mere state of mind ... is usually established by appropriate inference and presumption from the overt acts proved." *Hall*, 261 Iowa at 771–72, 156 N.W.2d at 669.

Evidence was available from which the jury could have found all the fraud elements established by the requisite quality of proof. We hold there was no error in submitting the question of fraud to the jury.

### III. *Rescission and Restoration of Consideration.*

Kunkle argues that when, as here, the city never rescinded the contract and tendered back the consideration received, trial court erroneously instructed the jury that if the contract was procured by fraud, the city could avoid liability. The city asserts this theory was not advanced in Kunkle's trial objection to the instruction. While that issue is close, we resolve it in favor of Kunkle.

Defendant relies on the general rule set out in *Test v. Heaberlin*, 254 Iowa 521, 524–25, 118 N.W.2d 73, 75 (1962).

> Where a party is defrauded, upon acquiring knowledge thereof he must elect whether to rescind the contract because of the fraud or affirm it and claim damages. If a defrauded party elects to disaffirm he must do so promptly and must ordinarily restore or offer to restore what he received under the contract.
>
> Restatement, Contracts, section 480(1), states, subject to certain exceptions not applicable here: "The power of any party ... to avoid a transaction for fraud or misrepresentation is conditional on an offer made promptly after acquiring knowledge of the fraud or misrepresen-

tation to return the amount of any money or other performance received as part of the transaction, in substantially as good condition as when received by him, ...."

(Citation omitted.) *See also Mills County State Bank v. Fisher*, 282 N.W.2d 712, 714 (Iowa 1979) ("[D]efendant's failure to promptly attempt to return the note proceeds ... upon discovering the fraud ... amounted to an election against rescission. This standard is clearly the law in Iowa *with limited exceptions not applicable here.*") (emphasis added and citations omitted). Restatement (Second) of Contracts section 384 comment c (1981) suggests some of these exceptions:

> *Where no offer of return required.* In some instances there is no requirement of an offer to return. This is so if the property was worthless when received .... It may also be so if it was never possible to return the property or if it has become impossible because the recipient used or disposed of it before he had knowledge of the grounds for restitution.... In those cases no offer need to be made if justice requires that compensation be accepted in place of the property and if the payment of such compensation can be assured. In determining what justice requires, consideration will be given to all the circumstances, including any misconduct such as fraud or duress by the other party.

Several of our older decisions indicate that in certain circumstances rescission and tender are not mandated in order to avoid liability on the contract. *See Commercial Savings Bank v. Kietges*, 206 Iowa 90, 98–99, 219 N.W. 44, 48 (1928); *Bean v. Bickley*, 187 Iowa 689, 712–13, 174 N.W. 675, 684 (1919); *Sutton v. Greiner*, 177 Iowa 532, 537, 159 N.W. 268, 270 (1916).

In this case the evidence tended to show the equipment furnished by Kunkle was of no value, as clearly it did little to improve the city's water problems. It was not used in the new plant. We are not required, however, to make a final determination whether this case falls within the

exception to the general rule in fraud cases, because the alleged fraud represented an attempt to avoid the competitive bidding statute. Contracts let in violation of that statute are void. *See Thompson v. L.J. Voldahl, Inc.*, 188 N.W.2d 377, 380 (Iowa 1971):

> We have held that one who contracts with a municipality ... is bound at its peril to take cognizance of statutory limitations upon the authority of the government agency. Recovery is denied under the ... public policy that the taxpayers should be protected from the evasion of statutory prerequisites ... and from the opportunity for fraud or collusion ....

*See also Everds Brothers v. Gillespie*, 256 Iowa 317, 321, 126 N.W.2d 274, 277 (1964) ("We are committed to the rule that a municipal contract made in violation of a mandatory statute is not merely voidable but void."). Thus, due to the nature of Kunkle's fraud in this instance, trial court's instruction was not erroneous.

IV. *Instruction on Competitive Bidding Statute.*

Kunkle contends trial court's instructions erroneously omitted his defense that each item of work undertaken was never estimated over $10,000, thus making the bidding statute inapplicable.

■ Kunkle's exceptions to instructions and requested instructions in district court, and his arguments here, seem to proceed on a theory that each item of "an open account constitutes a separate contract, separate work, separate items." We reject this theory. Code section 384.96 requires competitive bidding "[w]hen the estimated total cost of a public improvement exceeds the sum of ten thousand dollars." This language plainly requires an estimate of the total cost of the project. Kunkle's approach in fragmenting an open account that exceeds the bidding limitation in order to produce a spawn of little contracts would nullify the above statute. Even the most complex project could be broken down into contractual components small enough to avoid the bidding requirement.

Returning to the other branch of Kunkle's argument, he contends trial court erred in not submitting to the jury his claim that he worked not on one, but ten, public projects.

■ Trial court's instruction number five, however, clearly stated Kunkle's position that "each public improvement was performed under a separate contract with the city; and that the amount of each contract was under $10,000." It allowed the jury to find for Kunkle if it had been convinced "[t]hat each of the ten items of repair as claimed by plaintiff were separate public improvements." Although Kunkle's requested instruction stated "there has been no violation of [the competitive bidding statute,]" this was a fighting issue at trial, and his evidence fell short of establishing his right to have the jury so instructed as a matter of law.

■ Kunkle objects to the portion of the court's instruction that stated, "neither the city nor the contractor can divide the public improvements into several contracts so that the amount of each contract falls below $10,000." This statement, however, is a clear reflection of the law. *See* E. McQuillin, *The Law of Municipal Corporations* § 29.33 (3d ed. 1981) ("Where a municipality is prohibited from letting contracts involving an expenditure of more than a specified sum without submitting the same to competitive bidding, it cannot divide the work and let it under several contracts, the amount for each falling below the amount required for competitive bidding."). It is true that McQuillin further states that "legally separable and factually separate transactions" may be let without bids even if, in the aggregate, they exceed the competitive bidding amount. Under this record, however, the jury permissibly could find that Kunkle did not prove the required legal and factual separateness. *Compare Horrabin Paving Co. v. City of Creston*, 221 Iowa 1237, 1248, 262 N.W. 480, 487 (1935) ("We think that, in entering into four contracts, one for each of the [four] streets [to be paved], instead of one contract covering the entire work,

there was an evasion [of the competitive bidding statute]") *with Brown v. Bozeman,* 138 Cal.App. 133, 137–38, 32 P.2d 168, 169 (1934) ("The undisputed evidence in this case shows conclusively that ... each improvement [erecting bleachers, improving handball and basketball courts, building tennis courts, landscaping and floodlighting] suggested itself separately to the members of the board and was separately undertaken ... that at no time did ... the board ... have any general scheme or plan to construct all of the improvements ....").

The issues Kunkle raises with respect to the above instruction are without merit.

### V. *Instruction on Quantum Meruit.*

Kunkle contends trial court's instruction on his right to a quantum meruit recovery was erroneous because the court made the right contingent upon the jury's finding there was no violation of the competitive bidding statute.

With commendable candor, Kunkle's counsel concedes our cases consistently have rejected quantum meruit recoveries when there have been violations of the competitive bidding statute. We have held such contracts void, not merely voidable. *See, e.g., Everds Brothers v. Gillespie,* 256 Iowa at 321, 126 N.W.2d at 277–79; *Madrid Lumber Co. v. Boone County,* 255 Iowa 380, 384–87, 121 N.W.2d 523, 526–27 (1963).

Kunkle argues these decisions were posited on the concept that municipal corporations are creatures of the legislature, having only such powers as the legislature grants. *See Everds Brothers,* 256 Iowa at 321–22, 126 N.W.2d at 277; *Madrid Lumber Co.,* 255 Iowa at 383–84, 121 N.W.2d at 525. This concept, he asserts, was reversed with the adoption of the municipal home rule amendment, Iowa Const. art. III, § 38A:

Municipal corporations are granted home rule power and authority, *not inconsistent with the laws of the general assembly,* to determine their local affairs and government, except that they shall not have power to levy any tax unless expressly authorized by the general assembly.

The rule or proposition of law that a municipal corporation possesses and can exercise only those powers granted in express words is not a part of the law of this state.

(Emphasis added.)

This amendment does not grant municipalities a license to act outside the law. We have emphasized that "[t]he Home Rule Amendment grants home rule power 'not inconsistent with the laws of the general assembly,'" *Green v. City of Cascade,* 231 N.W.2d 882, 890 (Iowa 1975). Despite the amendment we nonetheless have insisted that municipalities comport with statutory mandates. *See Chelsea Theater Corp. v. City of Burlington,* 258 N.W.2d 372, 373–74 (Iowa 1977); *Dunphy v. City Council,* 256 N.W.2d 913, 921 (Iowa 1977). We hold the "not inconsistent with the laws" exception to the home rule amendment applies here.

Kunkle further argues there is a growing movement toward permitting quantum meruit recovery in cases of this kind, citing *Layne Minnesota Co. v. Town of Stuntz,* 257 N.W.2d 295, 300–01 (Minn.1977); C. Antieau, *Municipal Corporation Law* § 10.32 (1984) ("[T]here are many well-reasoned cases permitting quasi-contract relief, and the trend of the law is clearly this way.").

Several of the decisions relied on by Antieau involve situations in which there was bidding, but the municipality failed to comply with some technicality of the applicable bidding law. Further, our Iowa case law denying quantum meruit recovery is still the majority rule:

Many courts ... have taken the view that the municipality ordinarily cannot be held liable on any type of quasi-contractual theory. Some courts, however, have expressed the opposite view ....

... Some courts, although generally allowing recovery ..., have suggested that recovery would be denied where the

transaction was tainted with bad faith, fraud or collusion.

... [C]ourts have usually denied recovery ... in cases involving contracts for the construction or repair of water installations ....

Annot., 33 A.L.R.3d 1164, 1170–71 (1970). *See also* McQuillin at § 29.41 ("If a contract required to be let on competitive bidding is let without bidding ... it is invalid and cannot be the basis of any liability against the municipality, the general rule being that no recovery can be had on an implied contract, even though the municipality has received the benefits of the contract.").

We need not decide here whether on a record showing substantial and good faith compliance with the bidding requirements we would permit limited recovery to the extent the municipality was enriched, despite failure to follow some formality in statutory procedures. This is not such a case. We are convinced the reasons supporting the rule we consistently have invoked are still valid, and should be applied in this case. Therefore, we find no error in trial court's instruction, which subjected Kunkle's quantum meruit claim to the city's affirmative defenses.

We have considered other arguments advanced by Kunkle, even though they are not discussed in this opinion.

The judgment entered in district court is affirmed; as is the decision of the court of appeals.

DECISION OF COURT OF APPEALS AND JUDGMENT OF DISTRICT COURT AFFIRMED.